**EMW MANUFACTURING COMPANY, Appellant,**

v.

**Paul LEMONS, Appellee.**

No. 2-86-253-CV.

Court of Appeals of Texas, Fort Worth.

Nov. 19, 1987.

Rehearing Denied Dec. 17, 1987.

Judgment Reversed Feb. 17, 1988.

Crowles & Thompson and Geoffrey C. Graham, Dallas, for appellant.

Bishop, Payne, Lamsens & Brown and S. Gary Werley, Fort Worth, for appellee.

Before BURDOCK, JOE SPURLOCK, II, and KELTNER, JJ.

## OPINION

BURDOCK, Justice.

This is an appeal of a dismissal of a petition for bill of review. In the underlying personal injury lawsuit, appellee, Paul Lemons, obtained a default judgment against appellant, EMW Manufacturing Company ("EMW"), in the amount of $151,443.00.

We reverse and remand for a trial on the merits of appellant's petition for bill of review.

In March, 1985, Paul Lemons filed his original petition against EMW Manufacturing Company, a California entity. Lemons alleged that he was employed by Chuck–E–Cheese Pizzatime Theatre in Euless, Texas, and on October 29, 1983 he was severely injured as he was operating a pizza dough roller machine manufactured by EMW. Lemons' petition contained allegations sounding in strict products liability, breach of express and implied warranties, and negligence. On October 16, 1985, the trial court entered a default judgment reciting that although EMW had been properly cited to answer and appear, it had failed to do so. Judgment was entered in favor of Lemons for the sum of $151,443.00.

On August 28, 1986 EMW filed its original petition for bill of review seeking to set aside the default judgment entered against it. *See* TEX.R.CIV.P. 329b(f). EMW also filed a motion for temporary injunction asking the court to enjoin execution on the October 16, 1985 judgment until the trial court's decision in the pending bill of review proceeding. A hearing on the motion

was held October 3, 1986 at which time the trial court denied the temporary relief sought. After a hearing on EMW's bill of review on November 24th, the trial court entered an order denying the bill of review.

In two points of error, EMW contends the trial court erred in: 1) denying EMW's motion for temporary injunction because an injunction was necessary to prevent irreparable injury for which EMW had no adequate remedy of law; and 2) dismissing EMW's bill of review because the pleadings set forth a prima facie meritorious defense to the claims asserted by Lemons.

Concerning EMW's first point of error, the record shows a hearing on the motion was held on October 3, 1986 and an order was immediately entered denying the relief sought. EMW perfected an interlocutory appeal of the temporary injunction denial pursuant to TEX.CIV.PRAC. & REM. CODE ANN. sec. 51.014(4) (Vernon 1986) (cause no. 2–86–218–CV); however, before such appeal was heard by this court, the trial court denied EMW's petition for bill of review. Subsequently, on January 14, 1987, EMW voluntarily dismissed the interlocutory appeal in cause no. 2–86–218–CV.

Appellee urges, without the benefit of any supporting authority, that the issue of the denial of the temporary injunction is now moot. We agree for the reasons set forth below.

█ The interlocutory appeal was EMW's exclusive means of bringing before this court the trial court's denial of the temporary injunction sought by EMW. See EMW Mfg. Co. v. Lemons, 724 S.W.2d 425, 427 (Tex.App.—Fort Worth 1987) (orig. proceeding); Farley v. Clark Equipment Co., 484 S.W.2d 142, 150 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). When a temporary injunction is filed in the trial court, its sole function is to preserve the status quo pending final trial of the case on the merits. Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962) (per curiam); Bryant v. Barnes, 438 S.W.2d 435 (Tex.Civ.App.—Waco 1968, no writ). When the trial court in the case at bar entered the final judgment on the merits denying EMW's bill of review, the trial

court's prior order denying the temporary injunction became moot. See Bryant, 438 S.W.2d at 435; Conway v. Irick, 429 S.W.2d 648, 650 (Tex.Civ.App.—Fort Worth 1968, writ ref'd); see also International Ass'n of Machinists v. Federated Ass'n of Accessory Workers, 133 Tex. 624, 130 S.W.2d 282, 283 (1939).

Accordingly, this issue is not now properly before us, and appellant's first point of error is overruled.

█ In its second point of error, EMW asserts that because it presented a prima facie meritorious defense to the original claims asserted by Lemons, the trial court erred in denying EMW's bill of review. A bill of review is an equitable proceeding to set aside a judgment that is no longer appealable or subject to a motion for new trial. Transworld Financial Services v. Briscoe, 722 S.W.2d 407 (Tex.1987); Baker v. Goldsmith, 582 S.W.2d 404, 406 (Tex. 1979). The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. Transworld, 722 S.W. 2d at 407. In the usual bill of review, the movant must both plead and prove three elements: 1) a meritorious defense to the cause of action alleged to support the judgment; 2) which the movant was prevented from asserting by fraud, accident or the wrongful act of the original plaintiff; 3) unmixed with any fraud or negligence of the movant. Id. at 407–08; Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998 (1950).

In its bill of review, EMW alleged the court, in the underlying personal injury lawsuit, never acquired jurisdiction over it because of improper service of process; therefore, the default judgment rendered against EMW was void. EMW also asserted it had a meritorious defense to the lawsuit; specifically, any defect in the pizza dough rolling machine was caused by a material alteration of the product by someone other than EMW, after it had left EMW's control. Lastly, EMW stated its failure to file an answer was not intentional or the result of conscious indifference,

but was due to a mistake on the part of EMW's agent.

The Supreme Court of Texas has established a two-step procedure to be followed in a bill of review proceeding. As a pretrial matter, a bill of review complainant must present prima facie proof to support his defense to the underlying lawsuit. *Baker*, 582 S.W.2d at 408. This preliminary showing is essential in order to assure the court that valuable judicial resources will not be wasted by conducting a spurious "full-blown" examination of the merits. *Id.*

The relevant inquiry is not whether 'the result would probably be different' on retrial as some Texas cases have indicated. Such a test would require the court to weigh the evidence. Rather, *a prima facie meritorious defense is made out when it is determined that the complainant's defense is not barred as a matter of law and that he will be entitled to judgment on retrial if no evidence to the contrary is offered. This is a question of law for the court.* [Comparison citations omitted.] Prima facie proof may be comprised of documents, answers to interrogatories, admissions, and affidavits on file along with such other evidence that the trial court may receive in its discretion. The bill of review defendant may respond with like proof showing that the defense is barred as a matter of law, but factual questions arising out of factual disputes are resolved in favor of the complainant for the purposes of this pretrial, legal determination. If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case.

On the other hand, if a prima facie meritorious defense has been shown, the court will conduct a trial.

*Id.* at 408–09 (emphasis added). If a prima facie meritorious defense has been estab-

lished, then at trial the complainant must open and assume the burden of proving by a preponderance of the evidence the second and third elements set out in *Baker*, 582 S.W.2d at 406–07 (fraud, accident or wrongful act of opposite party, unmixed with any fault or negligence of complainant). *Id.* at 409. Conditioned upon an affirmative finding to these issues, the fact finder will then determine whether the original plaintiff has proved the elements of his original cause of action. *Id.*

A hearing was held in the instant case on November 24, 1986. The parties presented oral arguments, but the only evidence introduced at the hearing was the statement of facts from the October 3, 1986 temporary injunction hearing. This testimony consisted of the examination of two witnesses: Craig Deromedi, the sole proprietor of EMW; and the attorney who filed the underlying personal injury suit on behalf of Lemons against EMW. Additionally, the trial court considered Deromedi's affidavit, and the affidavit of Fran Carter, EMW's insurance agent, reciting facts relating to EMW's failure to answer Lemons' original petition.

At the conclusion of the November 24th hearing, the trial court denied EMW's bill of review. EMW initially claims that the court in this hearing was in actuality improperly granting Lemons' previously filed motion to dismiss because of pleading inadequacies. The record before us does not contain any indication that the trial court ever ruled on Lemons' pending motion to dismiss.[1] EMW's brief recites that a hearing was held on the motion to dismiss on November 7, 1986, at the conclusion of which the trial court carried forward the motion until the November 24th hearing. The statement of facts from the November 7th hearing is not in the record before us. The docket sheet reflects: "[Lemons'] Motion to Dismiss carried forward to 11–24–86 when case set on merits. [Judge's signature]." However, in view of the trial court's emphatic declaration at the Novem-

---

1. In his motion to dismiss the bill of review, Lemons asserted as grounds that EMW's petition failed to allege "fraud, accident or wrongful act" by Lemons. Additionally, Lemons claimed the petition did not allege that EMW was free from fault or negligence. Finally, Lemons contended no meritorious defense was pled or proven.

ber 24th hearing that the bill of review, and not a motion, was set for trial, we need not involve ourselves in the controversy of whether this docket notation may even be considered by us.[2]

■ Accordingly, we find the trial court did not enter any order in conjunction with Lemons' motion to dismiss, and EMW's bill of review was not denied because of pleading inadequacies.[3]

At this juncture we must determine whether the trial court's denial of EMW's petition for bill of review was a dismissal of the case because the court determined EMW had not established a prima facie meritorious defense as a preliminary pretrial matter, *see Baker*, 582 S.W.2d at 408–09, or whether the court's November 24th Order was in actuality a judgment after a trial on the merits of the bill of review, as appellee's brief contends.

After reading the statement of facts of the November 24, 1986 hearing, it is clear to us that counsel for both parties considered the hearing to be a pre-trial determination regarding EMW's prima facie proof to support its defenses to Lemons' causes of action.[4] We do note that both sides argued numerous issues at the November 24th hearing, in addition to the question of EMW's prima facie meritorious

defense. There was discussion from the parties' attorneys concerning whether: EMW's agent showed conscious indifference; service of citation had been proper; and EMW was at fault in not notifying various persons of its change of address. Further, the trial judge himself asked questions about these ancillary issues. Nonetheless, these issues were not before the trial court at this preliminary hearing mandated by *Baker*. In fact, trial court's final judgment following the November 24th hearing in this case states:

> Plaintiff's Petition for Bill of Review, having duly and regularly come before this Court for a *preliminary hearing* on November 24, 1986 at 9:00 o'clock a.m.;
> ... [Emphasis added.]

Accordingly, we will treat the November 24th hearing as a preliminary determination concerning whether EMW had shown: 1) its defenses were not barred as a matter of law; and 2) that it would be entitled to judgment on retrial if no evidence to the contrary is offered. *See Baker*, 582 S.W. 2d at 408–09. This latter determination being a question for the court, *see id.*, the test appears to be analogous to a legal evidentiary point and as stated one commentator, "[i]t would seem then that as long as there is some probative evidence—

---

**2.** *Compare* the majority and dissenting opinions in *Energo Intern. Corp. v. Modern Indus. Heating*, 722 S.W.2d 149, at 151, 152–53 (Tex.App.— Dallas 1986, no writ); *see also Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex.1986), and *N–S– W–Corp. v. Snell*, 561 S.W.2d 798, 799 (Tex. 1977), allowing consideration of docket notations in certain instances.

**3.** The issue of whether EMW had to allege the second and third elements of *Baker*, 582 S.W.2d at 406–07, or whether it only needed to plead a lesser standard—*see Peralta v. Heights Medical Center, Inc.*, 715 S.W.2d 721, 722 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.) and *Edgin v. Blasi*, 706 S.W.2d 353, 354–55 (Tex.App. —Fort Worth 1986, no writ)—is not before us. Nonetheless, it would have been improper for the trial court to dismiss EMW's bill of review because of pleading inadequacies until EMW had been given an opportunity to replead. *See Edgin*, 706 S.W.2d at 355; *see also Briscoe v. Transworld Financial Services*, 705 S.W.2d 288, 290 (Tex.App.—San Antonio 1986, writ granted) (en banc), wherein bill of review complainants elected to stand on their pleadings after special

exceptions were sustained because of pleading inadequacies, following which the appellate court addressed the sufficiency of the pleadings. *Rev'd on merits, Transworld Financial Services v. Briscoe*, 722 S.W.2d 407 (Tex.1987).

**4.** Lemons' attorney argued to the court as follows:

> It just seems to us, Your Honor, that to have a full-blown trial in this case, which in our opinion would show nothing more than what is already on file, would be a waste of the Court's time.
> Baker versus Goldsmith clearly holds that the Court has the power *at a preliminary type hearing, such as this is,* to deny the Bill of Review, from which proceeding the Plaintiff in Bill of Review can then appeal.
> ....
> But *we would ask that the court make a finding today that a final trial in this proceeding is not needed,* and that by the Affidavits on file, the briefs and the previous testimony before this Court, we would point out that we need go no further in this Bill of Review proceedings [sic]. [Emphasis added.]

more than a scintilla—to support the defense, the determination ... must be made in [the bill of review complainant's] favor." *See* 31 J. WICKER, CIVIL TRIAL AND APPELLATE PROCEDURE, sec. 320 (Texas Practice 1985). Therefore, we must review Lemons' original causes of action and EMW's asserted defenses and apply this standard of review.

In his original petition, Lemons stated that EMW sold a pizza dough rolling machine to Chuck–E–Cheese Pizzatime Theatre, Lemons' employer. Pizza dough is fed by hand into the portion of the machine containing the rolling mechanisms. On October 29, 1983, as Lemons was operating this machine, his hand was pulled into the machine and his hand, wrist, and lower arm were crushed by the steel rollers in the machine, resulting in serious personal injuries.

Lemons' pleadings alleged several causes of action. All his allegations revolve around his contentions that there should have been safety devices to insure that the operator's hands and arms remained a safe distance from the crushing mechanism of the dough rollers, and EMW should have provided a warning regarding this danger.

■ In order to establish a prima facie meritorious defense which would entitle it to a trial on the merits of its bill of review, EMW's pleadings and proof at the preliminary hearing must have offered some evidence in support of its defense to each cause of action used to support the default judgment.

Lemons first pled a products liability action under the RESTATEMENT (SECOND) OF TORTS sec. 402A (1965), alleging design and marketing defects. Next, Lemons asserted breach of the express and implied warranties that the machine in question was of merchantable quality and was safe and fit for the purpose intended. *See* TEX. BUS. & COM.CODE ANN. secs. 2.313, 2.314, and 2.315 (Tex.UCC) (Vernon 1968). Lastly, Lemons alleged ordinary negligence in the following respects: 1) failing to design the machine with a sufficient safety guard; 2) if a guard or shield had originally been installed on the machine, negligently designing the machine so the guard could be easily broken and removed, thereby rendering the machine in a hazardous and dangerous condition; and 3) selling the machine without warning users as to the possible injurious consequences of using the machine.

In its petition for bill of review, EMW stated:

The Plaintiff has a meritorious defense to the suit above described in that the material alteration of the product that was the subject matter of that suit bars recovery by the Defendant. The facts establishing such defense are that the safety guard of the pizza dough rolling machine, Model 20, Serial Number 2091220, had been removed by Defendant or someone else other than Plaintiff. Because of this alteration, the product in question was not in the same condition as it was when it left Plaintiff's control. In support of such allegations, the Affidavit of Craig Deromedi is attached as Plaintiff's Exhibit "B" and incorporated herein by reference.

Craig Deromedi is the owner of EMW Manufacturing Company. In his affidavit[5] and temporary injunction testimony, Deromedi related that when his company shipped the machine it was equipped with five stationary safety bars and a sixth safety bar which is an emergency shut-off

---

5. In his affidavit, Deromedi identifies the machine as a model no. 20–B dough sheeter designated for use by Pizza Time Theatre in Euless, Texas. He states this machine was shipped on June 30, *1985*; no serial number is listed. On appeal, appellee urges for the first time that because his injury occurred in October, *1983*, any meritorious defense alleged in Deromedi's affidavit may not be considered because Deromedi is referring to the wrong machine. Appellant has not responded to this contention.

Appellee's original petition and appellant's bill of review pleadings all refer to the same machine—model 20, serial number 2091220—with no shipping date listed in either document. Inasmuch as the *1985* reference is an apparent typographical error which was not mentioned until this late stage, and because appellant's pleadings correctly refer to the machine in question, we do not agree with appellee's contention that we must disregard Deromedi's affidavit.

switch. The five immobile bars are bolted into the machine and prevent the operator's arms from coming into contact with the machine's rollers. The sixth safety bar is also bolted into the machine, but the bar pivots and rotates and will turn the machine off if any object thicker than two and three-eighths inches enters the feed tray. This sixth bar contains a label stating "EMERGENCY SHUT–OFF." All six bars are extremely difficult to remove because they are secured by a dab of epoxy which is placed on the machine at each point where a bolt contacts the machine. These safety bars are not designed to be removable under normal circumstances or when the machine is used to roll dough.

Deromedi further attested that: "[Lemons' attorney told him] that, at the time of Plaintiff's injuries, the safety bars had been removed from the dough sheeter and were not attached as when I shipped the machine." The affiant also stated he "did not foresee that the operators of pizza restaurants would remove the safety bars," and the bars are only removed by independent contractors and manufacturers when they service the machine.

Strict liability was recognized as a cause of action in this State in 1967 when Texas adopted section 402A of the Restatement (Second) of Torts. *See McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex. 1967); *Shamrock Fuel & Sales Co., v. Tunks*, 416 S.W.2d 779, 783 (Tex.1967); RESTATEMENT (SECOND) OF TORTS sec. 402A (1962). Defects in products are commonly classified as either manufacturing defects, design defects, or marketing defects resulting from a lack of adequate warnings or instructions. *See Thomas v. St. Joseph Hospital*, 618 S.W.2d 791, 797 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *Helicoid Gage Div. of Am. Chain & Cable Co. v. Howell*, 511 S.W.2d 573, 575 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

Concerning Lemons' products liability cause of action alleging *design* defects, section 402A provides, in pertinent part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS sec. 402A (1965). The principal requirement in the proof of a design defect case involves establishing that the design renders the product unreasonably dangerous for its intended reasonably foreseeable use. *See generally* JAMES B. SALES, *Product Liability Law in Texas*, 23 HOUS.L.REV. 134, 134–36 (1986). A product is defectively designed if it is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. *See Accord v. General Motors Corp.*, 669 S.W.2d 111, 116 (Tex.1984); *Turner v. General Motors Corp.*, 584 S.W. 2d 844, 846–47 (Tex.1979) (opinion on reh'g); and 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.02 (1982).

With regard to EMW's defenses to this cause of action, comment h of Restatement section 402A provides that a product is not in a defective condition when it is safe for normal handling and consumption. *See* RESTATEMENT (SECOND) OF TORTS sec. 402A comment h (1965). Additionally, comment g states that "[t]he seller is not liable when he delivers the product in a safe condition, and subsequent mishandling or other causes make it harmful by the time it is consumed." RESTATEMENT (SECOND) OF TORTS sec. 402A comment g (1965); *see also* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 70.05 (1982).

Lemons contends that under the rule stated in *General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex.1977), in order to establish the defense of misuse (whether classified as misuse or as material or substantial change/alteration), EMW was required to establish: 1) Lemons should have

reasonably anticipated as consequences of the alleged misuse that the malfunction or injury, or some malfunction or injury, would occur; 2) the harm was reasonably foreseeable to Lemons; and 3) the percentage the misuse contributed to bring about the event. *See id.* at 351–52.

■ In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414 (Tex.1984), the Supreme Court prospectively replaced the defense of misuse with the doctrine of comparative causation. *See id.* at 427–29; *see also Placencio v. Allied Indus. Intern., Inc.,* 724 S.W.2d 20, 21, n. 1 (Tex.1987). Misuse is no longer a separate defense, but "will be subsumed under the more familiar notion of contributory negligence." *Duncan,* 665 S.W.2d at 428. The Court then overruled *Hopkins* to the extent it was inconsistent with the holding in *Duncan,* and proceeded to hold that "in products liability cases in which at least one defendant is found liable on a theory other than negligence, the plaintiff's damages shall be reduced only by the percentage of causation attributed to the plaintiff, regardless of how large or small that percentage may be." *Id.* at 429.

In other words, as stated by Sales, under the rule espoused in *Duncan:*

> Under comparative causation, the award of damages is reduced by the percentage of harm caused by plaintiff's own conduct, irrespective of the percentage of negligence that contributes to the injury producing event. The relative fault of the parties is not compared. Rather, the harm caused by the defective product is compared with the harm caused by the plaintiff's conduct as well as the conduct of third parties. Conduct by the plaintiff to be considered in making this comparison encompasses contributory negligence, assumption of the risk, *misuse,* failure to mitigate, and failure to avoid damages (avoidable consequences). Since the ordinary care standard for negligence represents a lesser standard than required by misuse and assumption of risk, *for all practical purposes, misuse and assumption of the risk are eliminated and are subsumed under contributory negligence.* [Footnotes omitted.]

JAMES B. SALES, *Product Liability Law in Texas,* 23 HOUS.L.REV. at 238–39 (1986) (emphasis added).

Because the defense of misuse/substantial or material change or alteration has been encompassed by comparative causation, in order for the trial court in the instant case to determine at the preliminary hearing whether EMW "will be entitled to judgment on retrial if no evidence to the contrary is offered," *see Baker,* 582 S.W.2d at 408, the court had to ascertain whether there would be any percentage of causation attributed to Lemons. As a result, EMW still had to allege and produce some evidence at this preliminary stage to raise its defense of contributory negligence.

■ We have previously set out the contents of Deromedi's affidavit, and his testimony at the prior temporary injunction hearing. After reviewing the record we find that Deromedi's affidavit, combined with his testimony at the temporary injunction hearing, raised some evidence regarding EMW's defense of misuse/substantial or material change or alteration, sufficient for this preliminary determination of whether there is any evidence of the harm caused by Lemons' conduct, or by the conduct of third parties. Accordingly, EMW made out a prima facie meritorious defense to Lemons' products liability design defect cause of action. We next must review EMW's defenses to the remaining theories of liability.

■ Concerning Lemons' allegations of a *marketing* defect, this action is established by proof that EMW knew or should have known of potential harm to a user because of the nature of its product; therefore, EMW was required to give an adequate warning of such dangers. *See Bristol–Myers Co. v. Gonzales,* 561 S.W.2d 801, 804 (Tex.1978), and 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.05 et seq. (1982); *see generally* 23 HOUS.L.REV. at 136–37, and JAMES B. SALES, *The Duty to Warn and Instruct for Safe Use in Strict Tort Liability,* 13 ST. MARY'S L.J. 521 (1981). A manufacturer has a duty to inform users of

hazards associated with the use of its products. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591 (Tex.1986), citing RESTATEMENT (SECOND) OF TORTS sec. 388 (1965). This Restatement section provides:

> Section 388. Chattel Known to be Dangerous for Intended Use
>
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
>> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>>
>> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>>
>> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

RESTATEMENT (SECOND) OF TORTS sec. 388 (1965).

In his testimony, Deromedi acknowledged there was no warning on the machine outlining what would happen if the safety bars were removed; however, there was a written warning on the machine indicating power should be disconnected before servicing and cleaning, and the sixth safety bar was marked as an emergency shut-off switch. Additionally, in his affidavit the affiant related how difficult it was to remove the six safety bars, and he "did not foresee that the operators of pizza restaurants would remove the safety bars." We find that the record contains some (albeit minimal) evidence regarding EMW's defense that it did not know, nor should it have known, of potential harm to a user, because the machine was not intended to be operated without the six safety bars in place. Therefore,

EMW presented a prima facie meritorious defense to Lemons' products liability marketing defect cause of action.

EMW's defenses to Lemons' allegations of breach of express and implied warranties, and negligence will be discussed together. Concerning the warranty claims, Lemons' pleadings stated:

> In addition, Defendant, EMW MANUFACTURING COMPANY, expressly and impliedly warranted to the public generally, and specifically to the Plaintiff, that the dough rolling machine, model 20, serial number 2091220 was of merchantable quality and was safe and fit for the purpose intended when used under ordinary condition and in an ordinary manner. Plaintiff relied upon these express and implied warranties and suffered the injuries and damages set forth below as a proximate result of the breach of these warranties.

In order to recover for a breach of an express warranty, a plaintiff must prove:

(1) an affirmation of fact or promise made by the seller to the buyer relating to the goods;

(2) such affirmation of fact or promise became a part of the basis of the bargain;

(3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises;

(4) that the goods sold by the seller failed to comply with the promises or affirmations of fact;

(5) that the buyer, because of such failure was financially injured; and

(6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.

*General Supply & Equipment Co., Inc. v. Phillips,* 490 S.W.2d 913, 917 (Tex.Civ.App. —Tyler 1972, writ ref'd n.r.e.); TEX.BUS. & COM. CODE ANN. sec. 2.313 (Vernon 1968).

Sections 2.314 and 2.315 of Texas Business and Commerce Code deal with implied warranties of merchantability and fitness for a particular purpose. *See* TEX.BUS. & COM. CODE ANN. secs. 2.314 and 2.315

(Vernon 1968). To be merchantable the good must pass without objection in the trade under the contract description, and must be fit for the ordinary purposes for which such goods are used. *See* sec. 2.314(b)(1) and (3). An implied warranty of fitness for a particular purpose arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods...." TEX.BUS. & COM. CODE ANN. sec. 2.315.

 With regard to Lemons' negligence claims alleging design and marketing defects, in a negligence cause of action against a manufacturer for injuries suffered as a result of the manufacturer's product the plaintiff must establish that: 1) the manufacturer owed a legal duty to the plaintiff; 2) the manufacturer breached that duty; 3) the plaintiff suffered an injury as a result of the breach; and 4) the breach of duty was a proximate cause of the injury. *See Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984). Every manufacturer must provide a product that is reasonably safe for its foreseeable use, and has a duty to warn of dangers in the use of its product of which it knows or should know. *Rawlings Sporting Goods Co., Inc. v. Daniels,* 619 S.W.2d 435, 439 (Tex.Civ.App.—Waco 1981, writ ref'd n.r. e.).

 The record before us reflects that EMW alleged and produced evidence in support of its contentions: that the pizza dough rolling machine was not defective or unsafe in any respect when it left its control; and that EMW could not have reasonably foreseen that the machine would be operated without the six safety bars intact. Accordingly, we find EMW presented a meritorious defense to the cause of action for breach of express warranty because it negated the requirement of section 2.313 that the goods failed to comply with the affirmations of fact or promise. Additionally, we find this identical proof constituted some evidence supporting EMW's defense that when the machine left its possession,

the machine was fit and safe for the particular purpose of rolling pizza dough, thereby addressing Lemons' implied warranty causes of action under sections 2.314 and 2.315. Lastly, EMW used this same proof to raise its defense (that EMW did not breach a legal duty to Lemons) to Lemons' negligence claims, and we find this was some evidence that EMW would be entitled to judgment on retrial if no evidence to the contrary is offered on these negligence allegations.

In conclusion, we hold that because EMW presented prima facie proof to support its defense to the underlying lawsuit, the trial court erred in denying/dismissing the case. EMW's second point of error is sustained.

The trial court's judgment is reversed and the cause remanded for a trial on the merits of EMW's petition for bill of review.

KELTNER, J., recused.