# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00279-CV

**Neisha Jones, Appellant**

**v.**

**Texas Department of Protective and Regulatory Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. FM007061, HONORABLE PETER M. LOWRY, JUDGE PRESIDING

Appellant Neisha Jones appeals the denial of her bill of review.  By two issues, she urges that the district court erred in refusing to submit her bill of review to a jury for a trial on the merits and in failing to file findings of fact and conclusions of law.  We hold that Jones established a *prima facie* meritorious defense, satisfying the first element of a bill of review, and was therefore entitled to a jury trial on the bill=s merits.  Accordingly, we will reverse the district court=s order and remand the cause for further proceedings.

### BACKGROUND[1]

---

[1] These facts are taken from Jones=s pleadings and the evidence she presented at the bill-of-review hearing.  For reasons explained later in the opinion, we did not consider the evidence presented by the Texas Department of Protective and Regulatory Services in constructing the factual background of the case.

Neisha Jones was fourteen, under the care of the Texas Department of Protective and Regulatory Services (the ADepartment@),[2] and living in the San Marcos Treatment Center, a fully accredited psychiatric hospital and residential treatment center, when she became pregnant. She gave birth to a daughter on September 4, 1996, and mother and child moved into foster care. Jones and her daughter eventually moved to a licensed child-placing facility, but Jones remained in the Department=s care. Jones was expected to stay at the facility until she reached eighteen, although the facility had indicated that she could stay longer if she continued her education and employment. Jones, however, had informed the facility of her plans to leave, with her daughter, upon reaching age eighteen.

In early 1999, when she was seventeen, Jones violated the facility=s rules by going on a date, taking her daughter with her, and failing to inform the facility=s officials where she was going, whom she would accompany, and the license plate number of the car in which she would be riding. Instead, Jones told the officials that she was leaving to visit her grandmother. In response to this incident, the facility threatened to call Jones=s caseworker, remove her child from her care, and place her child for adoption. Subsequently, Jones=s daughter was taken from her and placed in foster care.

On February 16, 1999, the Department initiated termination proceedings against Jones. The district court appointed an attorney to represent Jones. In August, Jones moved out of the facility and in with her grandmother; her daughter remained in foster care.

---

[2] The record does not reveal the circumstances precipitating Jones=s placement with the Department; nor does it detail how long Jones had been in the Department=s care.

On April 28, 2000, Jones signed an affidavit of voluntary relinquishment of parental rights. Her court-appointed attorney was not present at the time, although her caseworker and two Child Protective Services (ACPS@)[3] employees were present. On May 1, the district court held a hearing on the Department=s petition to terminate Jones=s parental rights and terminated those rights based on Jones=s relinquishment affidavit.[4] Jones was not present at this hearing, but her court-appointed attorney was.[5]

Jones filed this bill of review on October 30, claiming that her affidavit was not voluntarily executed because her attorney was not present when she signed it and because the affidavit was procured by the Department=s fraud. Jones further asserted that the Department had no basis for terminating her parental rights, other than the affidavit, and that the termination was not in the child=s best interest. After hearing evidence, the district court denied the bill of review. Jones timely requested findings of fact and conclusions of law. When no findings or conclusions were filed within twenty days of the request, Jones filed a notice of past due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297. Forty days after the original request, the district court still had not filed findings and conclusions. *See id.* Jones now appeals the denial of her bill of review by two issues. Jones=s first issue challenges the district court=s refusal to submit her bill of review to a jury for a trial on the merits. By her second issue, Jones claims the district court erred in failing to file findings of fact and conclusions of law.

---

[3] Child Protective Services is a program within the Department. *See* 40 Tex. Admin. Code ' 700.402(3) (2002).

[4] The district court also terminated the rights of the alleged biological father. He did not appear at the termination hearing, did not challenge the decree terminating his rights, and is not a party to this appeal.

[5] Jones testified at the bill-of-review hearing that she thought someone from the Department told her she did not have to be present at the hearing on the petition to terminate her parental rights.

## I. Applicable Law

A bill of review is an equitable proceeding by a party to a former action who seeks to set aside a judgment that is no longer appealable or subject to challenge by a motion for new trial. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 926-27 (Tex. 1999). A bill-of-review complainant must prove three elements: (1) a meritorious defense to the cause of action alleged to support the judgment, or a meritorious claim, (2) which he or she was prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake, and (3) unmixed with the fault or negligence of the complainant. *Hanks v. Rosser*, 378 S.W.2d 31, 34-35 (Tex. 1964); *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950). Bill-of-review relief is available only if a party has exercised due diligence in pursuing all adequate legal remedies. *Herrera*, 11 S.W.3d at 927. If legal remedies were available but ignored, relief by bill of review is unavailable. *Id.*

The procedure for conducting a bill-of-review proceeding is set out in *Baker v. Goldsmith*, 582 S.W.2d 404 (Tex. 1979). First, the bill-of-review complainant must file a petition alleging factually and with particularity the three elements of a bill of review. *Id*. at 408. The complainant must then present, as a pretrial matter, *prima facie* proof to support the meritorious defense alleged in the petition. *Id.* The only relevant inquiry at this preliminary stage is whether (1) the complainant=s defense is barred as a matter of law and (2) the complainant will be entitled to judgment on retrial if no evidence to the contrary is offered. *Id.* at 408-09. This is a question of law for the court. *Id.* at 409. In making its determination, the district court may consider discovery documents, affidavits, and such other evidence that the court admits under its discretion. *Id.* The bill-of-review defendant may also present proof, but is limited to showing that the meritorious defense is barred as a matter of law; any factual questions arising out of factual disputes are resolved in favor of the complainant at this preliminary stage of the proceeding. *Id.* If the court determines that the complainant has failed to establish a *prima facie* meritorious defense, the court shall terminate the bill-of-review proceeding and dismiss the case. *Id.*

On the other hand, if the district court determines that the complainant has presented a *prima facie* meritorious defense, the court may then conduct a trial, during which the complainant must prove, by a preponderance of the evidence: (1) whether the complainant was prevented from asserting the meritorious defense due to fraud, accident, or wrongful conduct by the opposing party or official mistake (2) unmixed with the fault or negligence of the complainant. *Id.* If the complainant satisfies this burden, the underlying controversy between the parties is retried. *Id.* The district court may try these remaining two elements in conjunction with the retrial of the underlying case or may conduct a separate trial on the elements. *Id.*; *Martin v. Martin*, 840 S.W.2d 586, 591 (Tex. App.CTyler 1992, writ denied). The complainant may demand a jury trial on the two remaining elements. *Martin*, 840 S.W.2d at 592.

## II.  Procedural Background

In this case, Jones complains of the district court=s refusal to grant her a jury trial. As explained above, however, a complainant such as Jones is not entitled to a jury trial until she has surmounted the first bill-of-review hurdleC*prima facie* proof of a meritorious defense. It is only after the district court has determined that the complainant has presented such *prima facie* proof that she may present her case to a jury. Thus, we will sustain Jones=s issue if it appears from the record that Jones presented *prima facie* proof of a meritorious defense, and the district court considered the merits of Jones=s bill of review, including the final two elements, without honoring her request for a jury.

The district court held two hearings on Jones=s bill of review, the first on March 12 and the second on March 13. Although both Jones and the Department characterize the March 13 hearing as a hearing on the merits of the bill of review, our review of the record reveals otherwise.

**6**

The only notice included in the clerk=s record filed with this Court reflects that a Apretrial hearing@ was set for March 12. There is no notice of a trial on the merits of the bill of review. The reporter=s record of the March 12 hearing designates the hearing as a APRETRIAL HEARING.@ At the beginning of the hearing, the district court stated his understanding of its purpose: AI understand that the only thing to be heard to day [sic] is whether there is a jury issue involved in the pretrial. Is that right?@ Both parties responded that the district court was correct and presented arguments to the court regarding whether Jones was entitled to a jury trial. Neither party presented evidence during the hearing.

The Department argued that although Jones might demand a jury, she first had to establish a meritorious defense, so it scheduled the March 12 pretrial hearing to allow Jones to establish Athat she has a meritorious defense that=s not barred as a matter of law . . . . [S]he has to make her prima facie case before this can get to a jury or for a judge to decide.@ And, according to the Department, Jones had to establish that she exercised due diligence prior to filing the bill of review.

Jones, on the other hand, urged that no pretrial hearing was necessary because Jones was not required to present a meritorious defense due to the constitutional implications of her complaint. In the alternative, she argued that she had already established her meritorious defense by stating under oath in her sworn petition that her relinquishment affidavit was involuntarily executed. Because the district court should not consider any controverting evidence when determining if a meritorious defense has been established and because the Department did not urge that Jones=s defense was barred as a matter of law, Jones contended that her sworn statement was sufficient *prima facie* proof of a meritorious defense; therefore, the court should proceed in considering the merits of the bill of review and grant Jones=s request for a jury trial.

7

After considering the parties= arguments, the district court ruled that Athe matters that are the subject of the pretrial [*i.e.*, *prima facie* proof of a meritorious defense] do not involve fact questions for a jury, so I=m going to deny the request for a jury. Not on the merits [of the bill of review] of course, but on this preliminary hearing.@ There is no written order in the clerk=s record reflecting the court=s ruling. After the court announced his ruling, he confirmed that the parties would Astart in the morning.@ At this juncture, neither the parties nor the court referred to a trial on the merits of the bill of review.

The reporter=s record of the March 13 hearing is designated ABILL OF REVIEW HEARING ON THE TERMINATION OF PARENTAL RIGHTS.@ There is nothing in the clerk=s record, however, that evidences that this hearing was separately noticed.[6] It appears from a reading of the reporter=s record that this hearing was simply a continuation of the pretrial hearing from the previous day. Instead of discussing Jones=s right to a jury trial, however, the parties presented evidence primarily addressing the issue of a meritorious defense.[7] Following the presentation of evidence by the parties, the district court found that Jones Adid not present a meritorious defense.@ Having concluded that Jones did not

---

[6] In fact, in a joint stipulation filed at the request of this Court, the parties stipulated that the March 12 pretrial setting was the only setting obtained. No setting for a jury or non-jury trial on the merits of the bill of review was ever obtained.

[7] Following the presentation of Jones=s evidence, the Department cross-examined Jones and presented evidence of its own. This evidence not only controverted Jones=s meritorious defense, but also addressed whether Jones had been negligent in failing to pursue all available remedies before filing her bill of review. Jones objected to all controverting evidence presented by the Department, arguing that controverting evidence cannot be considered by the district court in determining whether a *prima facie* meritorious defense has been established and therefore the evidence is irrelevant and inadmissible. *See Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex. 1988) (once it becomes clear that proceedings are not preliminary and trial judge intends to proceed with bill-of-review trial, party should object); *Harris v. Moore*, 912 S.W.2d 860, 862 (Tex. App.CAustin 1995, no writ) (because bill-of-review complainant asserted at hearing that he did not expect decision on merits of bill of review, he preserved his complaint regarding nature of hearing).

**8**

satisfy her burden, the court denied the bill of review.[8] Thus, it appears that the purpose of the hearing was to consider whether Jones had presented *prima facie* proof of a meritorious defense. We will therefore construe the March 13 hearing as a pretrial hearing and the district court=s judgment as an order of dismissal based on Jones=s failure to offer proof of a meritorious defense, and will review Jones=s issues accordingly. *See EMW Mfg. Co. v. Lemons*, 741 S.W.2d 212, 216-17 (Tex. App.CFort Worth 1987), *rev=d on other grounds*, 747 S.W.2d 372 (Tex. 1988). Because the only relevant inquiry at a pretrial hearing, whether the complainant has presented *prima facie* proof of a meritorious defense that is not barred as a matter of law, is a question of law, we review the district court=s decision on this issue *de novo. See Nichols v. Jack Eckerd Corp.*, 908 S.W.2d 5, 7-8 (Tex. App.CHouston [1st Dist.] 1995, no writ).

---

[8] The district court=s order states that Jones=s bill of review is Adenied.@ However, if a court concludes that the complainant has failed to establish a meritorious defense, the court should terminate the bill of review proceeding and *dismiss* the case. *Baker v. Goldsmith*, 582 S.W.2d 404, 409 (Tex. 1979). In this case, the district court stated that Jones Adid not present a meritorious defense.@ Thus, although the wording of the district court=s order is inartful and does not purport to Adismiss@ the case, because the court terminated the proceeding during this preliminary stage, upon finding that Jones failed to satisfy the first element of a bill of review, the district court dismissed the case as a matter of law, and we will construe the order as a dismissal order. *See EMW Mfg. Co. v. Lemons*, 741 S.W.2d 212, 216 (Tex. App.CFort Worth 1987), *rev=d on other grounds*, 747 S.W.2d 372 (Tex. 1988).

Jones=s first issue complains of the district court=s refusal to submit the bill of review to a jury for a trial on the merits. Jones, however, was not entitled to a jury trial during the preliminary stage of the bill-of-review proceeding. Although it appears from her brief that Jones has construed the March 13 hearing as a hearing on the merits of her bill of review and has accordingly couched her issue in terms of being denied a jury trial, she also raises issues relating to her presentation of a meritorious defense during the hearing. Liberally construing her issue, as we must, we will address those points that can be reasonably gleaned from the issue and supporting arguments presented. *See* Tex. R. App. P. 38.1(e), 38.9.

## III. Discussion

Jones argues that she established a *prima facie* meritorious defense, entitling her to a jury trial on the remaining two bill-of-review elements. Alternatively, even if she failed to establish a *prima facie* meritorious defense, she argues that she was not required to offer proof of this initial element because of the constitutional implications of her complaint. We will first address whether Jones offered proof of a meritorious defense.

In the judgment, the district court states the basis for terminating Jones=s parental rights:

> The Court finds by clear and convincing evidence that Respondent Mother, NIESHA [sic] JONES, has executed an irrevocable Affidavit of Relinquishment of Parental Rights to the subject child, TA NIESHA JONES. The Court further finds that this Affidavit satisfies all the requisites of ' 161.103 and ' 161.001(1)(K) of the Texas Family Code, and is herein incorporated for all purposes.

> The Court further finds by clear and convincing evidence that termination of the parent-child relationship between NIESHA [sic] JONES and the child, TA NIESHA JONES, is in the best interest of the subject child. (Texas Family Code ' 161.001(2)).

**10**

Thus, Jones was required to establish a meritorious defense to either of the two bases in order to proceed beyond the initial stage of her bill-of-review proceeding.[9]

Jones maintains, as a defense to the first basis for termination, that her affidavit of relinquishment was involuntarily executed. The family code implicitly recognizes that an affidavit of relinquishment must be executed voluntarily. Tex. Fam. Code Ann. ' 161.103 (West Supp. 2002); *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.CAustin 2000), *pet. denied,* 53 S.W.3d 684 (Tex. 2001). An involuntarily executed affidavit is a complete defense to a termination suit based solely on section 161.001(1)(K) of the family code. *In re V.R.W.*, 41 S.W.3d 183, 193 (Tex. App.CHouston [14th Dist.] 2001, no pet.); *Vela*, 17 S.W.3d at 759.

Once the Department established by clear and convincing evidence that Jones=s affidavit was executed according to the terms of section 161.103 of the family code, the affidavit could only be set aside upon proof, by a preponderance of the evidence, that it was procured by coercion, duress, fraud, deception, undue influence, or overreaching. *Vela*, 17 S.W.3d at 758. Jones asserts that her signing of the affidavit was a result of fraud.

---

[9] Section 161.001 of the family code provides that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has executed an irrevocable affidavit of relinquishment of parental rights *and* that termination is in the best interest of the child. Tex. Fam. Code Ann. ' 161.001 (West Supp. 2002). This provision requires proof of both elements. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.CAustin 2000), *pet. denied,* 53 S.W.3d 684 (Tex. 2001).

At common law, fraud refers to Aan act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage.@ *Id.* at 760. It may consist of both active misrepresentation and passive silence. *Id.* Common-law fraud includes actual and constructive fraud. *Id.* at 761. Actual fraud encompasses dishonesty of purpose or *intentional* breaches of duty that are designed to injure another or to obtain an undue and unconscientious advantage. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964); *Vela*, 17 S.W.3d at 761. Constructive fraud, on the other hand, is a breach of duty that the law declares fraudulent, regardless of the actor=s intentions, because it tends to deceive others, violates confidences, or causes injury to public interest. *Archer*, 390 S.W.2d at 740; *Vela*, 17 S.W.3d at 761. AA false representation of a past or present material fact, when one has a duty to speak the truth, is a frequent ground for recovery in fraud when another relies on the representation to her detriment, even in an ordinary arms-length transaction where only the ethics of the marketplace apply.@ *Vela*, 17 S.W.3d at 761 (citing *Chien v. Chen*, 759 S.W.2d 484, 495 (Tex. App.CAustin 1988, no writ)).

A Alegal duty@ may arise from several sources, including moral, social, domestic, or purely personal relationshipsCrelationships where Athe law demands of one party an unusually high standard of ethical or moral conduct with reference to another.@ *Chien*, 759 S.W.2d at 494 n.6 (quoting 1 Bogert, *Trusts and Trustees*, '' 1, 3 (2d ed. 1984)); *accord Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Vela*, 17 S.W.3d at 760. A legal duty may exist if it is established that one has placed special confidence in another, thereby giving that person a position of superiority and influence. *Vela*, 17 S.W.3d at 760-61. A legal duty may also be present where, because of family relationship or otherwise, a person is accustomed to being guided by the judgment or advice of another or is justified in placing confidence in the

**12**

belief that the other will act in the interest of that person. *Thigpen*, 363 S.W.2d at 253 (citing Restatement of Restitution ' 182 cmt. on clause (b) (1937)). The length of the relationship is another important factor in determining whether a duty exists. *Chien*, 759 S.W.2d at 494 n.6. Additionally, certain groups are owed a higher obligation because of their vulnerabilities. *Vela*, 17 S.W.3d at 761. Finally, when a party undertakes to speak, that party assumes a duty to tell the whole truth. *Id.*

Jones=s testimony during the pretrial hearing reveals that she had been in the Department=s care from at least the age of fourteen, when she became pregnant, and remained in its care until she turned eighteen. Jones attended special education classes while in school and only completed the eleventh grade. She had also been treated for depression while in the Department=s care. She was eighteen when she signed the relinquishment affidavit. Jones testified that before she signed the affidavit, the Department, through its employees, counseled her and discussed some of the possible results following her voluntary relinquishment of her parental rights.

Reviewing Jones=s evidence *de novo* and presuming it true, as we must, we conclude that Jones presented *prima facie* evidence that the Department owed Jones a duty of complete disclosure. Considering the length of the relationship between Jones and the Department, Jones=s particular vulnerabilities, and the special confidence she placed in the Department and her caseworker, the Department was bound in equity and good conscience to act in good faith and with due regard for the interests of Jones. In addition, once the Department undertook to advise Jones through its employees, the Department owed Jones a duty to tell the Awhole truth.@

Having concluded that the Department owed a duty of complete disclosure to Jones, we must now determine whether Jones presented *prima facie* proof of the remaining elements of fraudCan act,

**13**

omission, or concealment in breach of a legal duty, causing injury or the taking of an undue and unconscientious advantage. At the hearing, Jones testified concerning the day she signed the voluntary relinquishment affidavit and her motivations for doing so. She arrived at CPS that day because she was led to believe that if she did not show up, she Awas going to get my baby [taken] away, get her adopted.@ At CPS, Jones met with her caseworker and two other CPS employees. Jones asked for her attorney, but was told by one of the CPS employees that they Acould not get a hold of my caseworker -- I mean, to my lawyer. Then they said that they had talked to her on the phone and that she said for me to go ahead and sign the papers.@ Jones never spoke to her attorney that day and was not given a copy of her signed relinquishment affidavit to take with her.

Jones then recounted the representations made to her by the CPS employees. Jones was informed that if she signed the Apapers,@ her daughter Awas going to go to my cousin, my cousin Marsha, and that I would get to send her letters and pictures every day and I would get to see her every once in a while.@ Jones believed that her cousin Marsha was willing to care for Jones=s daughter and that Jones would indeed be allowed to enjoy pictures, letters, and visits with her daughter. If Jones did not sign the voluntary relinquishment affidavit, however, CPS was Agoing to give her [Jones=s daughter] up for adoption@ to a stranger and Jones Awasn=t going to get to see her at all.@ There is no evidence that the Department informed Jones that her parental rights could not be involuntarily terminated unless she was provided an opportunity for a trial. No one informed Jones that if Marsha were unable to care for Jones=s daughter, Jones would be unable to contest her daughter=s placement or that Jones would be unable to bring her daughter back home with her.

**14**

Later, when Jones met with her daughter for a good-bye visit, her caseworker suggested that Jones explain to her daughter A how she was going to stay with my cousin Marsha.@ The caseworker did not suggest that Jones=s daughter might be going to live someplace other than Marsha=s.

Finally, Jones testified that when she signed her voluntary relinquishment affidavit, she did not mean for her daughter to go to just anyone. She would not have signed the affidavit if her caseworker had not made the representations that she made. In fact, as soon as Jones discovered that her daughter would not be living with Marsha, she immediately sought legal representation and filed her bill of review.

The only question before the district court, following the presentation of this evidence, was whether Jones presented *prima facie* proof that she would be entitled to judgment on retrial if no evidence to the contrary were offered. *Baker*, 582 S.W.2d at 408-09. As observed by one commentator, because all contrary evidence must be disregarded, our review of the evidence seems analogous to a legal evidentiary review: A[I]t would seem then that as long as there is some probative evidenceCmore than a scintillaCto support the defense, the determination . . . must be made in the [complainant=s] favor.@ 2 Jeremy C. Wicker, *Texas Civil Trial and Appellate Procedure* ' 9-16 (Matthew Bender & Co. ed. 2001); *accord Lemons*, 741 S.W.2d at 216-17 (quoting 31 J. Wicker, *Civil Trial and Appellate Procedure*, ' 320 (Texas Practice 1985)). Within this framework, our review of the record reveals that Jones presented evidence showing her relinquishment affidavit was wrongfully procured. Considering only Jones=s version of events, as we must, we conclude that Jones signed the relinquishment affidavit because, based on the Department=s representations, she believed that (1) if she did not sign, her daughter would be taken from her and she would never see her again and (2) if she did sign, her daughter would be placed with her cousin Marsha. The Department failed to warn Jones that by signing the affidavit, she would have no

**15**

legal rights to her daughter, wherever she was placed, and could not enforce any of the Department=s representations about Jones=s ability to continue to play a role in her child=s life. These representations and omissions, if uncontested, would constitute a breach of the Department=s legal duty to Jones, regardless of its intentions, and would be fraudulent. Accordingly, we conclude that Jones presented *prima facie* proof of her contention that her affidavit of relinquishment was involuntarily executed because Jones was induced to sign it by the Department=s fraud.[10]

In its brief, the Department responds to Jones=s allegations by asserting that (1) Jones failed to exercise due diligence in exercising all available remedies before filing a bill of review, (2) Jones=s defense was barred as a matter of law, and (3) Jones would not be entitled to judgment on retrial. With regard to its due-diligence assertion, the Department argues that Jones failed to file a motion to revoke her affidavit prior to the termination hearing; at the hearing, Jones did not challenge the voluntariness of the affidavit; Jones was not present at the termination hearing, and her attorney presented no evidence at the hearing; and Jones failed to file a motion for new trial or appeal the termination judgment.

Jones=s bill of review alleges that she did not discover that her child would not be living with Marsha and thus did not learn of the Department=s fraud until more than thirty days after the judgment terminating her parental rights was rendered. Thus, she sufficiently pleaded that she could not have asserted her defense before then. Whether Jones was negligent for not asserting her claims at the termination hearing and whether she failed to exercise due diligence were not issues before the district court during the pretrial

---

[10] We reiterate that our consideration of Jones=s defense is through the prism of whether Jones would be entitled to judgment on retrial if no controverting evidence were offered. We express no opinion on the ultimate outcome of Jones=s bill of review.

hearing; therefore, Jones was not required to present evidence supporting her due-diligence assertions at this hearing. *See Beck v. Beck*, 771 S.W.2d 141, 142 (Tex. 1989).

In arguing that Jones=s meritorious defense is barred as a matter of law, the Department advances the same arguments regarding Jones=s lack of diligence in pursuing all available remedies. As explained above, Jones=s alleged negligence in failing to timely appeal the district court=s judgment is not an issue to be considered during the preliminary hearing. *See id.*

Finally, the Department argues that Jones would not be entitled to judgment on retrial. In support of this argument, the Department asserts that the district court may, within its discretion, accept evidence presented by the bill-of-review defendant, directs this Court to controverting evidence developed by the Department during the pretrial hearing,[11] and distinguishes this case from the facts in *Vela*. The Department=s assertion is contrary to *Baker v. Goldsmith*, where the supreme court held that the bill-of-review defendant is limited to offering proof that shows that the meritorious defense is barred as a matter of law. 582 S.W.2d at 409. Evidence offered by the Department disputing Jones=s factual allegations or credibility may not be considered during this preliminary stage. *See K.B. Video & Elecs., Inc. v. Naylor*, 847 S.W.2d 401, 405 (Tex. App.CAmarillo 1993, writ denied) (*prima facie* showing means, disregarding contrary evidence, would complainant be entitled to judgment on retrial; it does not mean preponderance of evidence); *Martin v. Martin*, 840 S.W.2d 586, 592 (Tex. App.CTyler 1992, writ denied) (trial court should not consider any controverting evidence in determining whether *prima facie* proof of meritorious

---

**11** To controvert the evidence offered by Jones, the Department cross-examined Jones and presented its own witness, Gillespie, during the pretrial hearing. It also offered a number of exhibits as evidence, which the district court admitted.

defense has been established).  The only issue at this pretrial juncture is whether Jones presented *prima facie* proof of grounds not barred as a matter of law and that would entitle her to judgment on retrial if no evidence to the contrary is offered; the district court was not called upon to determine whether the result would probably be different on retrial.  *Id.* at 408-09.  Such an inquiry would require the court to weigh the evidence, which is not a proper function of the court during such pretrial proceeding; instead, all factual disputes are resolved in Jones=s favor.  *Id.*  Thus, we sustain Jones=s first issue, reverse the district court=s dismissal of her bill of review, and remand the cause to the district court for further proceedings on the remaining elements of Jones=s bill of review.[12]

## CONCLUSION

We hold that Jones presented *prima facie* proof that her affidavit of voluntary relinquishment of parental rights was procured by fraud and was thus involuntarily executed.  Because Jones presented *prima facie* proof of a meritorious defense that was not barred as a matter of law, the district court erred in dismissing her bill of review.  Accordingly, we reverse the district court=s order of dismissal and remand the cause to the court for further proceedings.

_____

Lee Yeakel, Justice

---

[12]  Because we are sustaining Jones=s first issue, we do not reach her second.  *See* Tex. R. App. P. 47.1.

Before Justices Kidd, Yeakel, and Patterson: Opinion by Justice Yeakel;
  Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed:   August 30, 2002

Publish