171 S.W.3d 481 (2005)
Afuah BOATENG, Johnell Sanders Fernandez, Sharon Long Gay, Joel S. Hochman, Rosalind Hull, Gloria Ann Tucker, and Missy L. Walker, Appellants
v.
TRAILBLAZER HEALTH ENTERPRISES, L.L.C. and United States of America, Appellees.
No. 14-03-01442-CV.
Court of Appeals of Texas, Houston (14th Dist.).
July 26, 2005.
*482 Harry Herzog and David A. Carp, Houston, TX, for appellants.
*483 David J. Schenck, David Lawrence Horan, John H. McDowell, Jr., Matthew Griffith Nielsen, Dallas, Larry Ludka, John A. Smith III, Corpus Christi, TX, for appellees.
Panel consists of Justices ANDERSON, HUDSON, and FROST.

MAJORITY OPINION
KEM THOMPSON FROST, Justice.
At issue in this case is the propriety of the trial court's granting of a bill of review and dismissal of the underlying case for lack of jurisdiction at the preliminary hearing stage of the bill-of-review proceeding. Appellants, a group of judgment creditors, filed a garnishment suit and obtained a default judgment against a privately owned Texas limited liability company. Though not apparent from the face of the garnishment judgment, the garnishee is a fiscal intermediary of the federal government with respect to certain Medicare funds in its possession. More than a year after the garnishment judgment was signed, the United States and the garnishee sought a bill of review, asserting sovereign immunity. The trial court held a preliminary hearing under Baker v. Goldsmith, 582 S.W.2d 404 (Tex.1979), to determine whether the United States and the garnishee had presented prima facie proof of a meritorious defense. After completing the preliminary hearing and taking the matter under consideration, the trial court, without notice, summarily granted the bill of review, declared the garnishment judgment void based on sovereign immunity, and dismissed the underlying garnishment action for lack of jurisdiction. We reverse and remand.

I. FACTUAL AND PROCEDURAL BACKGROUND
On December 21, 2001, appellants Afuah Boateng, Johnell Sanders Fernandez, Sharon Long Gay, Joel S. Hochman, Rosalind Hull, Gloria Ann Tucker, and Missy L. Walker (collectively the "Boateng Parties") obtained a judgment in the amount of $838,466.63 against Rosa Alsobrooks and three of her entities, J & L Community Center, Inc., Houston Southwest Health Services, Inc., and Houston Northeast Health Services, Inc., (collectively the "Alsobrooks Entities") for failure to pay wages and independent contractor fees. Realizing that Alsobrooks and the Alsobrooks Entities could not pay the judgment, on that same day, the Boateng Parties, as judgment creditors, filed a garnishment action against appellee TrailBlazer Health Enterprise, L.L.C. ("TrailBlazer"), alleging that it "is indebted or has in hand effects belonging to one or more of the above described Defendant debtors or the parties named above." On December 21, 2001, the Boateng Parties also sent a fax to TrailBlazer stating that they had filed a garnishment action against TrailBlazer.
The garnishee, TrailBlazer, is a privately owned limited liability company that serves as a fiscal intermediary for the Medicare program. In the simplest terms, a fiscal intermediary acts as a conduit between the government and Medicare providers by determining the amounts to be paid on Medicare claims and disbursing funds provided by the government. Although the Secretary of the United States Department of Health and Human Services ("HHS") is officially charged with the administration of the Medicare Act, the Secretary delegates that task to the Centers for Medicare and Medicaid Services ("CMS"). Marsaw v. Trailblazer Health Enters., L.L.C., 192 F.Supp.2d 737, 740 (S.D.Tex.2002). The Secretary authorizes CMS to contract with private insurance companies to act as fiscal intermediaries or "carriers" by administering certain Medicare *484 reimbursements. Id. (citing 42 C.F.R. § 421.5); see also Matranga v. Travelers Ins. Co., 563 F.2d 677 (5th Cir.1977). CMS contracted with TrailBlazer to administer the Medicare program. At the time of the garnishment, the United States was TrailBlazer's primary customer and most of the funds TrailBlazer handled were Medicare funds. According to the record, however, TrailBlazer also maintained bank accounts containing other funds and held assets owned exclusively by TrailBlazer.
The Alsobrooks Entities, as Medicare providers, regularly presented claims and sought remuneration from TrailBlazer, which processed those claims for payment. Believing that TrailBlazer owed the Alsobrooks Entities funds or had other effects belonging to them in its possession, the Boateng Parties, as judgment creditors, sought to garnish funds owed by TrailBlazer, together with any effects in TrailBlazer's possession belonging to Alsobrooks or the Alsobrooks Entities.

TrailBlazer's Failure to Answer the Writ of Garnishment
TrailBlazer was formally served with process in the garnishment action on January 7, 2002, and its answer date was January 28, 2002. Nonetheless, TrailBlazer did not file an answer to the garnishment action nor did it file any motions with the trial court in response to the writ of garnishment. Instead, TrailBlazer forwarded the garnishment papers to Kendall Walker, Assistant General Counsel at Blue Cross and Blue Shield of South Carolina, TrailBlazer's parent corporation. Because of TrailBlazer's status as a fiscal intermediary with respect to Medicare funds, Walker, in turn, forwarded the garnishment application to Mark Forcier, Assistant Regional Counsel in the Office of the General Counsel of the HHS. Walker informed the Boateng Parties' counsel, Harry Herzog, that he had referred the matter to the United States, and that the United States would be providing TrailBlazer's defense. The United States, however, did not file an answer to the garnishment action nor did it file any motions with the trial court in response to the garnishment suit.
In late January 2002, Forcier spoke to Herzog. According to Forcier, Herzog informed him that his clients, the Boateng Parties, as garnishors, were seeking all receivables that would normally flow from Medicare to Alsobrooks or to the Alsobrooks Entities, the judgment debtors. Forcier shared with Herzog his belief that garnishment was not the correct method by which to obtain Medicare receivables from a Medicare contractor such as TrailBlazer. Forcier described the process, statutes, and regulations that he deemed applicable and appropriate and explained that the United States was the real party in interest in any action involving the administration of the Medicare program. On that same day, Forcier sent an e-mail to Herzog, stating that not only had no money been going to the Alsobrooks Entities "for some time," but that the Alsobrooks Entities owed CMS in excess of three million dollars for overpayments. The e-mail also stated there was an ongoing investigation regarding the extent of possible fraud in prior claims that led to the "huge overpayment." Forcier made no mention of any non-Medicare funds, administrative monies, or effects of Alsobrooks or the Alsobrooks Entities that might be in TrailBlazer's possession.
In the trial court below, Forcier and Herzog proffered different accounts of what transpired as a result of their dialogue about the garnishment action. Forcier understood that the Boateng Parties would use the process set forth in federal *485 regulations rather than the writ of garnishment. Herzog disputes this account and emphasizes that even if Forcier's advice as to the proper procedure to seek Medicare payments were correct, the Boateng Parties were also seeking to obtain other funds and effects in the garnishment action, including administrative funds that allegedly were not payments from Medicare.

Default Judgment Against TrailBlazer
Neither TrailBlazer nor anyone acting or purporting to act on its behalf moved to dismiss or dissolve the garnishment action, obtained any written agreement concerning filing an answer to the suit, or took any other action vis-à-vis the garnishment proceeding. In late June 2002, the Boateng Parties moved for a default judgment against TrailBlazer, and in mid-July 2002, the trial court granted the default judgment.
The default judgment against TrailBlazer makes no mention of TrailBlazer's status as a Medicare fiscal intermediary or that the United States is a real party in interest. The judgment does not mention the United States at all. Instead, the judgment merely sets forth the amounts the Boateng Parties are entitled to recover from TrailBlazer.
After their discussion in late January 2002, Forcier and Herzog had no further communication until October 2002, when Forcier, who apparently was not aware that a default judgment had been taken against TrailBlazer, attempted to contact Herzog about the dismissal of the garnishment action. Herzog responded to Forcier that it was "never [his] intent, understanding, or agreement" that the garnishment action would be dismissed. During October and November 2002, Forcier and Herzog communicated several more times concerning TrailBlazer's status as a Medicare fiscal intermediary, the United States's status as the purported real party in interest in the garnishment action, and the application of sovereign immunity as an alleged bar to the Boateng Parties' action. Herzog, however, made no mention of the default judgment to Forcier or to anyone at TrailBlazer, and, again, neither Forcier nor anyone else acting for TrailBlazer or the United States took any action in the garnishment proceeding.
In early August 2003, an attempt was made to execute on TrailBlazer's property to satisfy the Boateng Parties' judgment against TrailBlazer. According to TrailBlazer, this was the first time that either TrailBlazer or the United States learned that a default judgment had been entered against TrailBlazer based on its failure to answer in the garnishment action.

The Bill-of-Review Proceeding
About three weeks after learning of the default judgment, the United States, identifying itself as the real party in interest and on behalf of TrailBlazer, filed a petition for bill of review alleging the following, among other things:
 Because TrailBlazer is a Medicare carrier administering funds for the Medicare program, the United States was a real party in interest in the garnishment action, and the district court had no subject matter jurisdiction to render that judgment under the doctrine of sovereign immunity.
 Despite having had conversations with lawyers acting on behalf of both TrailBlazer and the United States and despite having contact information for these lawyers, the Boateng Parties' counsel filed a motion for default judgment and obtained a default judgment in the garnishment action without giving any notice to TrailBlazer or the United States.

*486  TrailBlazer and the United States had no knowledge of the existence of the default judgment until August 6, 2003, when a constable arrived at TrailBlazer's office seeking to execute upon some of TrailBlazer's property to satisfy the default judgment.
 The trial court should grant a bill of review to vacate the default judgment as void for lack of subject matter jurisdiction based on sovereign immunity.
 The default judgment is void and subject to collateral attack.
 The trial court should set aside the default judgment under traditional bill-of-review standards.
 The trial court should grant a temporary and then a permanent injunction against the Boateng Parties precluding them from executing upon the default judgment.
Within a week, TrailBlazer filed a plea in intervention substantially similar to the United States's petition for bill of review and containing all of the allegations listed above.[1]
On October 8, 2003, the trial court issued a docket control order with an April 5, 2004 trial setting. The next day, the trial court signed an order setting a preliminary bill-of-review hearing for November 3, 2003, for the stated purpose of determining whether the bill-of-review case would proceed to trial. Both the United States and TrailBlazer filed motions for summary judgment, and TrailBlazer sent out a notice of oral hearing on its motion for the same time as the preliminary hearing. On October 30, 2003, the trial court sent a letter to all parties stating that the bill-of-review preliminary hearing and the hearing on TrailBlazer's motion for summary judgment had been rescheduled to November 5, 2003. On that date, however, the trial court commenced the hearing and stated that the hearing was not a hearing on TrailBlazer's motion for summary judgment and that it was not a temporary-injunction hearing. At the beginning of the November 5, 2003 hearing, the trial court noted that it was conducting a preliminary hearing. The trial court indicated that the hearing was for the sole purpose of determining whether the United States and TrailBlazerthe bill-of-review plaintiffs (hereinafter "plaintiffs") could present prima facie proof of a meritorious defense.
After hearing some evidence, the court continued the preliminary hearing over to November 17, 2003. After the parties reconvened for the hearing and finished presenting evidence and after hearing argument from counsel, the trial court stated that the plaintiffs had shown a meritorious defense. The trial court further stated that, because TrailBlazer and the United States intentionally failed to answer the application for writ of garnishment after being properly served, these plaintiffs could not satisfy the other elements for a direct attack of a judgment by bill of review. The trial court then indicated that, if it decided that the default judgment was void for lack of subject matter jurisdiction under the doctrine of sovereign immunity, then it was thinking of granting the petitions for bill of review and setting aside the default judgment as being void, without any further procedure. Counsel for the Boateng Parties stated that taking such action would not be procedurally appropriate, noting that the proper procedure *487 for disposition on the merits would be for the court to have a hearing on cross-motions for summary judgment after the Boateng Parties filed their motion for summary judgment.
The day after the hearing ended, the trial court signed an order that contains the following recitations and rulings:
 The trial court held a hearing on November 5 and November 17, 2003, on the merits of the petitions for bill of review.
 The trial court has determined that TrailBlazer's sovereign immunity extends to the administrative funds the Boateng Parties seek to garnish.
 The trial court grants the petitions for bill of review, sets aside the default judgment in the garnishment action, and grants a new trial.
 The trial court finds that the default judgment is void for lack of jurisdiction. No new trial is needed and the garnishment action is dismissed for lack of jurisdiction.
 All other relief requested is denied and the order disposes of all parties and all claims.
The trial court did not grant the plaintiffs' motions for summary judgment.

II. ISSUE PRESENTED
The Boateng Parties present the following issue for appellate review:
After properly conducting a preliminary evidentiary hearing solely to determine if the plaintiffs would be allowed to proceed with their case, by then suddenly rendering a final judgment for the plaintiffs on the merits[,] the trial court violated the fundamental principles of procedural due process of law and Texas Rule of Civil Procedure 245.[2]
The Boateng Parties assert the trial court erred when, following a preliminary hearing for the sole purpose of determining whether the plaintiffs had presented prima facie proof of a meritorious defense, the trial court, without notice, rendered a final judgment on the merits of the petitions for bill of review. Although it is evident that the Boateng Parties disagree with the trial court's ruling on the merits of the petitions for bill of review, on appeal, they do not assert error based on the merits of the trial court's ruling, and they do not seek a rendition of judgment in their favor. Rather, they assert procedural error and seek reversal and remand so that proper procedures may be followed. The Boateng Parties assert that the trial court's procedural error is not subject to a harm analysis; however, in the alternative and out of an abundance of caution, they brief issues relating to a harm analysis of this procedural error. Although these issues involve the merits of the trial court's ruling, TrailBlazer briefs these issues only as alternative arguments regarding the harm analysis, if this court were to determine that it needs to perform a harm analysis.

III. ANALYSIS
A bill of review is an independent, equitable action brought by a party to a previous action seeking to set aside a judgment which is no longer appealable or subject to a motion for new trial. Baker v. Goldsmith, 582 S.W.2d 404, 406 (Tex.1979). In a bill-of-review proceeding involving a direct attack not based on lack of service of process of the petition in the prior case, *488 the bill-of-review procedure is ordinarily a two-step process:
(1) First, the trial court makes a determination, often based on a preliminary hearing, as to whether the bill-of-review plaintiff has presented prima facie proof of a meritorious defense. This requirement is satisfied if the court determines that the alleged meritorious defense is not barred as a matter of law and that the bill-of-review plaintiff will be entitled to judgment on retrial if no evidence to the contrary is offered. If not, then the trial court should dismiss the petition for bill of review.
(2) Second, if the plaintiff has presented such proof, then the trial court may proceed with discovery and trial regarding the merits of the bill-of-review petition.
See Baker, 582 S.W.2d at 408-09 (outlining two-step process); Ortmann v. Ortmann, 999 S.W.2d 85, 87-88 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (holding that in a bill-of-review proceeding, while Baker requires a pretrial determination that the petitioner has presented prima facie proof of a meritorious defense, this does not prevent the trial court from granting summary judgment in favor of the bill-of-review defendants without holding a separate hearing to determine whether plaintiff has presented prima facie proof of a meritorious defense).

A. What type of hearing did the trial court hold?
The Boateng Parties allege that, at the time the trial court granted the bill of review, the case was not in a procedural posture to be resolved on the merits, and for this reason, the case should be reversed. To rule on this contention, we first must determine the nature of the hearing that the trial court noticed and conducted on November 5 and 17, 2003. In the trial court's final judgment, it stated that it held this hearing to determine the merits of the casewhether bill-of-review relief should be granted. After reviewing the record, we conclude that this characterization is inaccurate. The day after it gave notice to the parties that the deadline to change the pleadings was January 6, 2004, and that trial was set for April 5, 2004, the trial court signed an order setting the hearing in question and stating that it would be "a Bill of Review hearing... at which time the court will determine whether this case will proceed to trial." This order gives notice to the parties of a Baker v. Goldsmith preliminary hearing (hereinafter "Baker hearing") rather than a trial on the merits of the petitions for bill of review. See Baker, 582 S.W.2d at 408-09. After the trial court signed this order, TrailBlazer noticed its motion for summary judgment for hearing at the same time. In a subsequent letter, the trial court stated that this hearing had been rescheduled to November 5, but it did not indicate any change in the nature of the hearing. The trial court did state in the letter that it would hear TrailBlazer's "Motion for Partial Summary Judgment" on November 5. Although TrailBlazer's motion for summary judgment sought full relief on its petition for bill of review and did not have the word "partial" in its title, the trial court was apparently referring to the fact that even if it granted TrailBlazer's motion, the United States's petition for review would remain.[3] There is no indication in the record that the United States ever set its motion for summary judgment for hearing on November 5.
On appeal, TrailBlazer admits that the hearing in question was not a summary-judgment *489 hearing, and any confusion as to whether TrailBlazer's motion for summary judgment was being heard on November 5 was dispelled by the trial court near the beginning of the hearing:
[counsel for TrailBlazer]: ... I've got a notebook for Your Honor of all of the cases that I cited in the summary judgment and
[trial court]: You areokay. I'm not hearing a summary judgment. I'm here on an oral hearing.
...
[counsel for TrailBlazer]: ... he didn't respond to our motion for summary judgment. There's no response on file to it.
[trial court]: Well, I don't really care because I'm not hearing a summary judgment.
The trial court started the hearing by stating that "we are here for a hearing on the bill of review and normally the plaintiffs would be expected to make a showing of bill of review requirements, although they have pled that they don't have to because the order complained of is absolutely void. So either I expect you to show me that it's void or to show me the requirements that you need to show under bill of review procedure. . . ." Though the trial court's statement in this regard may be somewhat ambiguous and arguably could be viewed as a statement of intent to inquire into the merits of the bill-of-review petitions, this statement is also consistent with a Baker hearing at which the trial court intended to determine if the plaintiffs could present prima facie proof of a meritorious defensethe alleged lack of subject matter jurisdiction in the garnishment action based on alleged sovereign immunity.
Shortly after this initial statement, the trial court more clearly indicated that it was conducting a Baker hearing, stating that "what I'm looking for is for them [the plaintiffs] to show that they get to trial.... So, I mean, we may do something else after they show that. We may have a summary judgment. We may have a temporary injunction hearing or whatever but right now, all I want to do is see if they go forward or if I dismiss it right now." After some discussion with counsel and just before it began to hear evidence, the trial court stated, "it's time for that proof we were talking about."
During the hearing, the trial court heard evidence concerning potential meritorious defenses, such as TrailBlazer's proffered sovereign-immunity defense and its defense that it allegedly was not indebted to any of the judgment debtors named in the garnishment application at the time it was served in the garnishment action. After offering evidence on behalf of the Boateng Parties, their counsel stated, "Your Honor, you have all the evidence I want to present to you for purposes of this preliminary hearing and my seven clients rest," to which the trial court responded, "Okay."
At the end of the hearing, the trial court stated that the bill-of-review plaintiffs had shown a meritorious defense. The trial court further stated that, because TrailBlazer and the United States intentionally failed to answer the application for writ of garnishment after being properly served, these plaintiffs could not satisfy the other elements for a direct attack of a judgment by bill of review. The trial court then indicated that, if it decided that the default judgment was void for lack of subject matter jurisdiction under the doctrine of sovereign immunity, it was thinking of granting the petitions for bill of review and setting aside the default judgment as being void, without any further procedure. Counsel for the Boateng Parties stated that any such action would not be procedurally appropriate, explaining that the *490 proper procedure would be for the trial court to hear cross-motions for summary judgment after the Boateng Parties filed their motion for summary judgment. Counsel for the Boateng Parties noted that there had been no hearing on the plaintiffs' motions for summary judgment, that pending discovery requests for information needed for the Boateng Parties' summary-judgment motion had not yet been answered by the plaintiffs, and that the Boateng Parties still needed to file a response to the plaintiffs' motions for summary judgment and file a cross-motion for summary judgment of their own.
Based on this record, we conclude that the trial court noticed and conducted a preliminary hearing under Baker v. Goldsmith. See Baker, 582 S.W.2d at 408-09; Jones v. Texas Dept. of Protective and Regulatory Servs., 85 S.W.3d 483, 488-89 (Tex.App.-Austin 2002, pet. denied) (holding that record revealed hearing in trial court was a Baker hearing rather than trial on the merits of the petition for bill of review, despite confusion among the parties as to the nature of the hearing).

B. Did the Boateng Parties preserve error as to their appellate challenge to the trial court's ruling on the merits of the petitions for bill of review following the Baker hearing?
TrailBlazer asserts that the Boateng Parties did not preserve error in the trial court on their sole issue on appeal for the following reasons:
(1) The trial court stated at the beginning of the hearing that it wanted to consider the issue of whether the garnishment judgment was void for lack of subject matter jurisdiction, and the Boateng Parties did not object to the court's consideration of this issue.
(2) The Boateng Parties admitted in their bench brief during the hearing that the trial court had properly used its inherent powers and Texas Rule of Civil Procedure 166 to conduct a preliminary evidentiary investigation into this case.
(3) The Boateng Parties did not object or move for a continuance at the outset of the hearing, when "it was clear" that the trial court intended to proceed with a trial on the merits rather than hold a preliminary hearing.
(4) The Boateng Parties voluntarily participated in the hearing after the trial court announced its intention to address the issue of whether the garnishment judgment was void for lack of subject matter jurisdiction, and they filed a bench brief on this issue, thus waiving any procedural error.
On appeal, TrailBlazer emphasizes its collateral attack on the garnishment judgment; however, TrailBlazer and the United States also sought bill-of-review relief based on the traditional requirements needed for a direct attack. If, as the record shows, the trial court noticed and conducted a Baker hearing, then a legitimate issue at this hearing was TrailBlazer's assertion that the garnishment judgment was void for lack of subject matter jurisdiction based on sovereign immunity, which was the main meritorious defense asserted in this direct attack. Therefore, TrailBlazer's first argument regarding preservation of error fails because consideration of this issue at the hearing was consistent with holding a Baker hearing, so there was no need for the Boateng Parties to object.
As to TrailBlazer's second argument, the Boateng Parties' bench brief is consistent with a Baker hearing and does not waive error. Although the bench brief does contain *491 a discussion of the second and third elements for a direct attack, the trial court allowed the parties to go into these issues at the hearing, and no party objected. The main issue addressed at the hearing was TrailBlazer's claimed entitlement to immunity in the garnishment action. The fact that a preliminary Baker hearing at times addresses irrelevant issues does not convert this preliminary hearing into a trial on the merits. Further, the Boateng Parties' bench brief states that the hearing is preliminary and that the proper procedure to address the merits following the hearing would be to hear cross-motions for summary judgment. Therefore, this bench brief does not waive the Boateng Parties' issue on appeal.
TrailBlazer also asserts that the Boateng Parties did not preserve error under the Lemons case because they did not object or move for a continuance once "it was clear" that the trial court intended to proceed with trial. See Lemons v. EMW Mfg. Co., 747 S.W.2d 372, 372-73 (Tex.1988). In Lemons, the Texas Supreme Court determined that the trial court had conducted a trial on the merits in the bill-of-review proceeding rather than a Baker hearing. See id. The Lemons court further held that the appellant in the court of appeals did not preserve error as to the trial court's changing of the Baker hearing into a trial on the merits because the appellant did not object or move for a continuance once it became clear that the trial court intended to conduct a trial. See id. We conclude that the Boateng Parties have preserved error. The record in this case shows that, unlike the facts in Lemons, the trial court conducted a Baker hearing rather than a trial on the merits. Furthermore, unlike the facts in Lemons, it did not become clear that the trial court intended to rule on the merits until the day after the hearing ended, when the trial court signed its final judgment. Once the trial court, by its judgment, made it clear that the court was retroactively converting the Baker hearing into a trial on the merits, the Boateng Parties timely preserved error on their appellate issue in their motion for new trial, which the trial court denied after a hearing. See id.
We disagree with TrailBlazer's assertion that the trial court clearly stated at the beginning of the hearing that it was about to conduct a trial on the merits of the petitions for bill of review. We also disagree that the trial court made this clear during its final comments at the end of the hearing. Although the trial court did informally indicate that it was thinking of ruling on the merits of the petitions for bill of review without any further procedure, counsel for the Boateng Parties promptly stated that taking such action would not be procedurally proper and that, to reach the merits, the court should hear cross-motions for summary judgment. TrailBlazer makes much of the fact that the Boateng Parties did not formally object and obtain a ruling as to these comments of the trial court; however, they did not need to do so because the trial court only stated a possibility that it was contemplating. The trial court did not formally give notice or unequivocally state an intention to rule on the merits, contrary to the purposes of the Baker hearing. This is another key factual distinction from the Lemons case, in which the trial court ruled on the merits at the conclusion of the hearing, with no objection from the appealing party. See EMW Mfg. Co. v. Lemons, 741 S.W.2d 212, 215 (Tex.App.-Fort Worth 1987), rev'd, 747 S.W.2d 372 (Tex.1988). Further, the Boateng Parties did not waive error by participating in a proceeding that the court later characterized as a trial on the merits because the trial court did not make it clear that it would rule on the merits until it did so the day after the hearing, when the *492 parties were not present. We conclude that under the legal standard set forth in Lemons, the Boateng Parties preserved error as to their appellate issue.

C. Did the trial court err in ruling on the merits of the petitions for bill of review following its Baker hearing?
The trial court had discretion to entertain cross-motions for summary judgment before conducting a Baker hearing. See Ortmann, 999 S.W.2d at 87-88. The trial court, however, chose to notice and conduct a Baker hearing. See Baker, 582 S.W.2d at 408-09. The trial court conducts such a hearing solely to determine whether the plaintiffs have presented prima facie proof of a meritorious defense. See Baker, 582 S.W.2d at 408-09; Jones, 85 S.W.3d at 493. In making this determination, the trial court examines (1) whether the plaintiffs' defense or defenses are barred as a matter of law, and (2) whether the plaintiffs will be entitled to judgment on retrial if no evidence to the contrary is offered. See Baker, 582 S.W.2d at 408-09.
After stating at the close of the hearing its conclusion that the plaintiffs had shown a meritorious defense and without any notice of a trial on the merits, the trial court signed an order granting the plaintiffs relief on the merits.[4] The trial court erred in doing so because, after determining that the plaintiffs had presented prima facie proof of a meritorious defense, the trial court should have proceeded with discovery and trial (whether by summary judgment or by a trial of the fact issues) regarding the merits of the bill-of-review petition. See Beck v. Beck, 771 S.W.2d 141, 142 (Tex.1989) (holding court of appeals erroneously converted the trial court's Baker hearing into a summary-judgment hearing by affirming trial court's dismissal following Baker hearing based on appellate court's conclusion that bill-of-review plaintiff was negligent); Baker, 582 S.W.2d at 408-09 (stating that only issue at Baker hearing is whether plaintiff has presented prima facie proof of a meritorious defense); Jones, 85 S.W.3d at 493-95 (holding that only question before trial court in Baker hearing is whether plaintiff has presented prima facie proof of a meritorious defense and that plaintiff's diligence and the merits of the petition for bill of review are not at issue).
Due process requires that a party receive "reasonable notice" of trial. See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988). In addition to showing that the trial court failed to follow proper bill-of-review procedures, the Boateng Parties also have affirmatively shown that the trial court ruled on the merits of the bill-of-review petitions with no notice that it would hold a trial on November 5 and 17, 2003. Although the record reflects that the parties had notice and an opportunity to be heard as to a preliminary Baker hearing, the record does not show that the parties received notice and an opportunity to be *493 heard as to a trial on the merits.[5] And though the record shows that the trial court conscientiously endeavored to follow and apply the complexities of bill-of-review procedure, we nevertheless conclude that the trial court erred by converting the Baker hearing to a trial on the merits after the hearing had ended. This error deprived the Boateng Parties of due process because they received no notice of trial and no opportunity to be heard at what later became, by the court's declaration, the trial on the merits. See Mocega v. Bradford Urquhart M.D., 79 S.W.3d 61, 64-65 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (reversing dismissal of medical malpractice action because trial court did not give notice of hearing on motion to dismiss); Green v. McAdams, 857 S.W.2d 816, 819 (Tex.App.-Houston [1st Dist.] 1993, no writ) (holding trial court erred in rendering post-answer default judgment after party failed to appear at trial because trial court gave defaulting party no notice of trial setting); Seckers v. Ocean Chems., Inc., 845 S.W.2d 317, 318-319 (Tex.App.Houston [1st Dist.] 1992, no writ) (holding trial court erred in dismissing case as a discovery sanction because trial court gave no notice of sanctions hearing to the sanctioned party); Palmer v. Cantrell, 747 S.W.2d 39, 41 (Tex.App.-Houston [1st Dist.] 1988, no writ) (same as Seckers).
In response to the Boateng Parties' argument that the trial court erred in converting the preliminary hearing into a final trial on the bill of review, after the fact and without proper notice, TrailBlazer argues, and our dissenting colleague agrees, that the trial court's judgment on jurisdictional grounds did not require any notice, hearing, or trial. TrailBlazer and our dissenting colleague assert that, even if the trial court gave no notice or opportunity to be heard on the merits of the bill-of-review proceeding, this action was not error because the trial court may dismiss a case over which it lacks jurisdiction at any time and without notice and opportunity to be heard on the jurisdictional issue. In support of this argument, TrailBlazer and our dissenting colleague cite various cases for the proposition that a court should dismiss sua sponte cases over which it determines that it lacks subject matter jurisdiction. In those cases, the trial court lacked subject matter jurisdiction over the case pending before the court. The bill-of-review proceeding that is before this court is an action that is separate from the case in which the challenged garnishment judgment was rendered. See Baker, 582 S.W.2d at 406; Schwartz v. Jefferson, 520 S.W.2d 881, 889 (Tex.1975). Accordingly, in the judgment below, the trial court exercised its equitable jurisdiction in cause number 03-49088 to grant TrailBlazer and the United States equitable reliefthe dismissal for lack of subject matter jurisdiction of the garnishment judgment in cause number 01-05070-A. The trial court did not dismiss the bill-of-review action for lack of subject matter jurisdiction. Therefore, the cases cited by TrailBlazer and our dissenting colleague are not on point.[6] *494 The trial court had equitable jurisdiction over the petitions filed by the United States and TrailBlazer. Presuming for the sake of argument that the trial court lacked subject matter jurisdiction in the garnishment action, that would not allow the trial court to summarily grant the petitions for bill-of-review relief without giving the Boateng Parties any notice or opportunity to be heard on the merits. The Boateng Parties were judgment creditors under a final Texas judgment against TrailBlazer, and they had due process rights to notice and an opportunity to be heard on the merits of the bill-of-review petitions.[7] The trial court erred in depriving them of those rights.

D. Is the trial court's procedural error subject to a harm analysis?
TrailBlazer devotes much of its brief to its argument that, even if the trial court procedurally erred as alleged by the Boateng Parties, this error was harmless because, they claim, the trial court's granting of the relief sought by the plaintiffs was correct. This argument presumes that the error in question is subject to a harm analysis. TrailBlazer cites no cases holding that a harm analysis applies to such error. The cases we have found hold that this error is not subject to a harm analysis. See Beck, 771 S.W.2d at 142 (reversing court of appeals's erroneous review of the merits of bill-of-review petition on appeal from trial court's Baker hearing ruling, without inquiring into whether such error was harmful); Jones, 85 S.W.3d at 494 (rejecting appellee's argument on appeal from Baker hearing dismissal that the petitions for bill of review failed based on lack of due diligence because that issue was not before the trial court in the Baker hearing); Mocega, 79 S.W.3d at 64-65 (reversing dismissal of medical malpractice action because trial court did not give notice of hearing on motion to dismiss, without performing harm analysis); Green, 857 S.W.2d at 819 (reversing for lack of notice of trial, without performing a harm analysis); Seckers, 845 S.W.2d at 318-319 (reversing death-penalty discovery sanctions for lack of notice of sanctions hearing, performing no harm analysis, and refusing to hold that error was harmless on the ground that sanctioned party was given hearing as to appropriateness of sanctions during motion-for-new-trial hearing); Palmer, 747 S.W.2d at 41(same as Seckers). Because no harm analysis applies, the arguments of the parties as to the merits of the petitions for bill-of-review relief are not relevant.[8] And because the trial court erred in converting the preliminary Baker hearing into a final trial on the merits after the fact, we sustain the Boateng Parties' sole issue on appeal.[9] We *495 reverse the trial court's judgment and remand the case for the trial court to issue a proper Baker hearing order and for further proceedings in accordance with this opinion.

IV. CONCLUSION
The trial court erred in converting the preliminary hearing on a bill of review into a final trial on the merits after its Baker hearing and without notice to the parties. Because of this procedural error, the trial court also erred in dismissing the underlying garnishment suit for lack of jurisdiction. Accordingly, we reverse the trial court's judgment, reinstate the garnishment judgment, and remand this case to the trial court for further proceedings consistent with this opinion.
HUDSON, J., dissenting.
J. HARVEY HUDSON, Justice, dissenting.
The majority reverses the judgment of the court below on the theory that the court did not give "reasonable notice" to appellants of its intention to dismiss the cause of action for want of subject matter jurisdiction at a preliminary hearing. Because I believe the trial court (1) lacked subject matter jurisdiction, (2) had the authority to sua sponte raise and decide the issue of its subject matter jurisdiction, and (3) afforded "reasonable notice" to the parties that its subject matter jurisdiction was at the heart of the issue to be decided at the preliminary hearing, I respectfully dissent.
Appellants obtained a default judgment on a writ of garnishment against TrailBlazer Health Enterprises, LLC. TrailBlazer is a wholly-owned subsidiary of Blue Cross Blue Shield created solely for the purpose of processing Medicare claims on behalf of the federal government. Because any recovery would come from the federal treasury, the United States is the real party in interest when a suit is brought against a Medicare carrier. Anderson v. Occidental Life Ins. Co. of Cal., 727 F.2d 855, 856 (9th Cir.1984); see also Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (holding a suit is considered to be against the sovereign if the judgment sought would expend itself on the public treasury or domain); Matranga v. Travelers Ins. Co., 563 F.2d 677 (5th Cir.1977) (per curiam).
Sovereign immunity, however, is a jurisdictional bar to suits brought against the United States. Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).[1] The doctrine protects the United States from being sued unless Congress has expressly waived the government's immunity. Kaffenberger v. United States, 314 F.3d 944, 950 (8th Cir.2003). Therefore, any waiver of the federal government's sovereign immunity cannot be implied, but must be unequivocally *496 expressed in statutory text. Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Such is the case even if the United States is not named as a party in the original action. Bank One, Tex., N.A. v. Taylor, 970 F.2d 16, 33 (5th Cir.1992). Accordingly, federal sovereign immunity is not waived simply by an appearance in a forum because officers of the United States possess no power through their actions to waive immunity of the United States or to confer jurisdiction on a court in the absence of some express provision of Congress. Department of Army v. Federal Labor Relations Auth., 56 F.3d 273, 275 (D.C.Cir.1995). Even when Congress has expressly waived sovereign immunity, such waiver must be strictly construed, in terms of its scope, in favor of the sovereign. Lane, 518 U.S. at 192, 116 S.Ct. 2092.
Appellants contend, however, that the trial court violated fundamental principles of procedural due process and Texas Rule of Civil Procedure 245 when it rendered a final judgment at what was supposed to be a preliminary evidentiary hearing. Rule 245 provides that a court may schedule a trial in contested cases with reasonable notice of not less than forty-five days unless the parties agree. TEX.R. CIV. P. 245. Thus, appellants claim the trial court erred when it entered a final judgment of dismissal with prejudice for want of jurisdiction without providing reasonable notice that the case would be tried "on the merits."[2]
The record reflects the order of dismissal was entered after a preliminary hearing regarding the propriety of appellees' bill of review.[3] The purpose of the hearing was to determine whether the United States could show "sufficient cause" that it had (1) a meritorious defense to the cause of action alleged to support the judgment, (2) which it was prevented from making by the fraud, accident or wrongful act of the opposite party, (3) unmixed with any fault or negligence of its own. Baker v. Goldsmith, 582 S.W.2d 404, 406-07 (Tex.1979). The "meritorious defense" at issue was whether sovereign immunity denied the trial court of any subject matter jurisdiction. Thus, subject matter jurisdiction was at the heart of the issue to be decided at the hearing.
While the trial court could have been clearer in announcing its intentions, the court stated it was considering whether its original order was "absolutely void," i.e., rendered without the benefit of subject matter jurisdiction. It should have come as no surprise to appellants that if the trial court discovered it lacked subject matter jurisdiction, the only order it could then issue would be to dismiss the case. See Duncan v. Texas Dept. of Pub. Safety, 6 S.W.3d 756, 758 (Tex.App.-Tyler 1999, no pet.).
Undoubtedly, a fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked. Anderson Nat'l Bank v. Luckett, 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692 (1944). But this does not mean that every order entered without notice and a preliminary adversary hearing offends due *497 process. Link v. Wabash R.R. Co., 370 U.S. 626, 632, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). While a party is entitled to notice and an opportunity to respond when a court contemplates dismissing a claim on the merits, it is not so when the dismissal is for lack of subject matter jurisdiction. Scholastic Entm't, Inc. v. Fox Entm't Group, Inc., 336 F.3d 982, 985 (9th Cir.2003).
Once a trial court learns that it lacks jurisdiction, it becomes the duty of the court to dismiss the cause, and when a suit is barred by sovereign immunity the cause should ordinarily be dismissed with prejudice. See Martin v. Texas Bd. of Criminal Justice, 60 S.W.3d 226, 231 (Tex.App.-Corpus Christi 2001, no pet.) (holding when a lawsuit is barred by sovereign immunity, dismissal with prejudice is proper); City of Cleburne v. Trussell, 10 S.W.3d 407, 409 (Tex.App.-Waco 2000, no pet.) (same); City of Houston v. Rushing, 7 S.W.3d 909, 914 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (same); University of Tex. Med. Branch at Galveston v. Hohman, 6 S.W.3d 767, 771 (Tex.App.-Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (same); Lamar Univ. v. Doe, 971 S.W.2d 191, 196 (Tex.App.-Beaumont 1998, no pet.) (same); Liberty Mut. Ins. Co. v. Sharp, 874 S.W.2d 736, 739 (Tex.App.-Austin 1994, writ denied) (same).[4]
The United States is not subject to Texas statutes, executive orders, or judicial decisions. Absent a Congressional waiver of sovereign immunity, Texas courts do not have even potential jurisdiction. Here, the appellants have not cited, and we have not found, any waiver of sovereign immunity by Congress that would authorize a Texas court to garnish Medicare funds. When, as here, a Texas court has no potential jurisdiction over a defendant, the defendant may collaterally attack the court's judgment with extrinsic evidence. Ponsart v. Citicorp Vendor Fin., Inc., 89 S.W.3d 285, 290 (Tex.App.-Texarkana 2002, no pet.) (citing Dispensa v. Univ. State Bank, 987 S.W.2d 923, 930 (Tex.App.-Houston [14th Dist.] 1999, no pet.)); 5 ROY W. MCDONALD & ELAINE A. CARLSON, TEXAS CIVIL PRACTICE § 29:27 (2004).[5] *498 Likewise, when, as here, there has been no waiver of sovereign immunity, the trial court lacks subject matter jurisdiction, and dismissal with prejudice is proper. Sepulveda v. County of El Paso, 170 S.W.3d 605, 610, No. 08-03-00514-CV, 2005 WL 850416, at *2 (Tex.App.-El Paso Apr.12, 2005, no pet. h.).
Perceiving no error in the trial court's dismissal, I respectfully dissent.
NOTES
[1] The United States and TrailBlazer also sought, at first, attorney's fees and a declaratory judgment stating that the default judgment in the garnishment was void for lack of subject matter jurisdiction based on sovereign immunity. However, both parties later withdrew their requests for this relief.
[2] Rule 245, entitled, "Assignment of Cases for Trial," provides that a court may schedule a trial in contested cases with a reasonable notice of not fewer than forty-five days unless the parties agree. TEX.R. CIV. P. 245.
[3] TrailBlazer adopted by reference the United States's motion for summary judgment.
[4] As a preliminary matter, we note that we presume the trial court heard a case only after proper notice to the parties, and the Boateng Parties have the burden to affirmatively show that they were not given notice that the trial court intended the hearing as a trial on the merits of the petitions for bill of review. See Jones v. Texas Dept. of Pub. Safety, 803 S.W.2d 760, 761 (Tex.App.-Houston [14th Dist.] 1991, no writ). The Boateng Parties are required to attach competent evidence to their motion for new trial showing that they had no notice that the hearing would be a trial on the merits. See id. We conclude that the Boateng Parties satisfied this procedural requirement, by attaching competent evidence to their motion for new trial showing lack of notice of a trial on the merits. See id.
[5] The record also shows that the parties did not receive notice and an opportunity to be heard at a summary-judgment hearing, although this is not relevant because the trial court did not grant any summary-judgment relief.
[6] The cases cited by TrailBlazer and our dissenting colleague state that a court can summarily dismiss a case pending before it upon determining that the court lacks subject matter jurisdiction over the pending case. However, none of these cases state that this legal principle allows or requires a trial court to summarily grant, without notice and an opportunity to be heard, an equitable bill of review over which the court has subject matter jurisdiction, simply because the plaintiffs seek bill-of-review relief based on an alleged lack of subject matter jurisdiction in another case.
[7] For this reason, we respectfully disagree with our dissenting colleague's statement that the Boateng Parties should not have been surprised when the trial court ruled on the merits of the bills of review. See post, op. at p. 497.
[8] As to the issue of whether the trial court lacked subject matter jurisdiction in the garnishment action, we respectfully disagree with our dissenting colleague's analysis of the facts and the law and his determination that the trial court lacked subject matter jurisdiction under the doctrine of sovereign immunity. Nonetheless, we do not detail the reasons for that disagreement because the merits of the trial court's determination regarding sovereign immunity are not before us.
[9] Our dissenting colleague states that we reverse the trial court's judgment because the trial court did not give the Boateng Parties reasonable notice of its intention to dismiss the garnishment action for lack of subject matter jurisdiction. It would be more accurate to say that we reverse the trial court's judgment because the trial court erred in converting the preliminary Baker hearing into a final trial on the merits after the fact, thus depriving the Boateng Parties of notice and an opportunity to be heard on the merits of the bill-of-review petitions.
[1] The doctrine of sovereign immunity has been extended to garnishment proceedings brought against the United States where there has been no consent to be sued. Federal Hous. Admin. v. Burr, 309 U.S. 242, 244, 60 S.Ct. 488, 84 L.Ed. 724 (1940); Buchanan v. Alexander, 45 U.S. (4 How.) 20, 20-21, 11 L.Ed. 857 (1846); see also Veterans Admin. v. Kee, 706 S.W.2d 101 (Tex.1986) ("As a general rule, government entities are immune from garnishment."). Sovereign immunity from garnishment proceedings also applies to federal funds disbursed by non-governmental entities to the extent that those funds have not been spent for their federally authorized purpose. Palmiter v. Action, Inc., 733 F.2d 1244, 1247-48 (7th Cir.1984).
[2] A dismissal with prejudice functions as a final disposition on the merits. Mossler v. Shields, 818 S.W.2d 752, 754 (Tex.1991).
[3] A bill of review is an equitable, independent action to set aside a judgment that is not void on the face of the record, but is no longer appealable or subject to challenge by a motion for new trial. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.2003), cert. denied, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004); Wembley Inv. Co. v. Herrera, 11 S.W.3d 924, 926-27 (Tex.1999).
[4] Some exceptions exist, however. For example, in Mullins v. Estelle High Sec. Unit, a prison inmate sued the Institutional Division of the Texas Department of Criminal Justice for injuries allegedly sustained when prison officials denied him needed medical supplies. 111 S.W.3d 268, 270 (Tex.App.-Texarkana 2003, no pet.). While the court found the suit did not fall within the parameters of the Texas Tort Claims Act and, thus, was barred by sovereign immunity, it was reluctant to hold that the inmate had "no other possible cause of action against [TDCJ] arising out of the same facts." Id. at 274. Accordingly, the court held the trial court erred in dismissing the suit with prejudice.

Likewise, in Li v. University of Tex. Health Sci. Ctr., 984 S.W.2d 647 (Tex.App.-Houston [14th Dist.] 1998, pet. denied), the plaintiff's breach of contract suit was barred by sovereign immunity, and the trial court dismissed with prejudice. However, the legislature subsequently granted the plaintiff express permission to sue the state on her breach of contract claim by a resolution that passed both legislative bodies and was signed by the governor. Id. at 653. Thus, this court modified the trial court's judgment by deleting from it the words "with prejudice" and substituting therefor the words "without prejudice." Id. at 654.
Thus, if there is no possibility that any Texas court will acquire jurisdiction or that appellants will ever prevail in a Texas court, the proper remedy is to dismiss with prejudice. See Dahl ex rel. Dahl v. State, 92 S.W.3d 856, 862 (Tex.App.-Houston [14th Dist.] 2002, no pet.).
[5] For example, "public policy concerns allow inquiry into the larger record when the judgment is entered against a foreign defendant," and, therefore, the court is not bound by the recitations in the judgment in a collateral attack, but may consider the entire record to determine the existence of jurisdiction. Pellow v. Cade, 990 S.W.2d 307, 312 (Tex.App.-Texarkana 1999, no pet.) (citing Hicks v. Sias, 102 S.W.2d 460, 464 (Tex.Civ.App.-Beaumont 1937, writ ref'd)). Also, a Texas court that is asked to enforce the judgment of a court of another state may collaterally inquire into matters concerning the jurisdiction of the other state's court when the party attacking the judgment did not appear in the prior proceeding. Kellogg v. Kellogg, 559 S.W.2d 126, 128 (Tex.Civ.App.-Texarkana 1977, no writ); Layton v. Layton, 538 S.W.2d 642, 647 (Tex.Civ.App.-San Antonio 1976, writ ref'd n.r.e.).