In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00181-CV


____________________



 KAREN KNUTSON, INDIVIDUALLY AND d/b/a EUPHORIA BUILDERS, 

BRUCE KNUTSON, INDIVIDUALLY AND d/b/a EUPHORIA BUILDERS, 


AND MARY CRUSE, Appellants



V.



ESTELLA FRIESS AND STEVEN FRIESS, Appellees






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 07-08-08867 CV






 MEMORANDUM OPINION


 This is a dispute about ownership of an easement located between two residential lots.
Both the plaintiffs and the defendants sought temporary injunctive relief from the trial court. 
The trial court rendered a final judgment dividing the easement between the plaintiffs and
defendants. The plaintiffs and the defendants appeal. Because we find the trial court ruled
on the merits of the case without proper notice to the parties, we reverse and remand.


Factual Background 


 Karen and Bruce Knutson, individually and doing business as Euphoria Builders, and
Mary Cruse (hereafter "the Knutsons") own Lot Three in the Ridgewood Subdivision,
Montgomery County, Texas. Estella and Steven Friess (hereafter "the Friesses") own Lot
Four. Situated between Lots Three and Four is a sixty-foot easement granted in 1981 to
Houston Light & Power Company ("HL&P") by Ridgewood Land Development Company
("Ridgewood"), the subdivision's original developer. 

 Prior to granting the easement, Ridgewood had purchased a 249.09 acre tract from
Champion Realty Corporation. Ridgewood subdivided the acreage into tracts ranging in size
from 5 acres to 6.05 acres. Conveyances of the individual tracts describe the property by lot
numbers indicated in the subdivision's final plat rather than by metes-and-bounds. For each
lot, the final plat contains a parenthetical notation, which indicates the acreage for the lot. 
According to the notations, Lot Three contains 5.74 acres and Lot Four contains 5 acres.

 In February 1998, the Friesses purchased Lot Four. The Friesses contend they fenced
the sixty-foot easement in 1998 after seeking and obtaining HL&P's permission. They assert
they have possessed the easement openly and peacefully since that time.

 In 2000, the Knutsons purchased Lot Three. In June 2007, the Knutsons applied to
CenterPoint Energy (HL&P's successor) for a release of the sixty-foot easement between
Lots Three and Four. On June 28, 2007, CenterPoint released "all of its right of use of the
hereinabove described easement. . . ." Subsequently, the Knutsons demanded in writing that
the Friesses remove the fence, and the Knutsons threatened to remove the fence if the
Friesses did not comply.

Procedural History


 On August 31, 2007, the Friesses filed an application for a temporary restraining order
("TRO") and a temporary injunction seeking to enjoin the Knutsons from tearing down the
fence. The trial court granted the TRO and set a show-cause hearing for the temporary
injunction on September 14, 2007. Both the Knutsons and the Friesses filed pleadings prior
to the show-cause hearing. The Knutsons filed an original answer, a counterclaim asserting
various causes of action, and a request for injunctive relief. The Friesses filed special
exceptions, an original answer to the counterclaims, and an amended petition seeking an
injunction and a declaratory judgment.

 On September 14, 2007, the scheduled date for the show-cause hearing, the parties 
explained their respective positions to the trial court. The court informed the parties that it
would re-schedule their case for a later date because the hearing would probably take a full
day. The trial court instructed the parties that they should maintain the status quo until the
court heard the case on its merits.

 At the second hearing, which occurred on October 1, 2007, the Friesses explained that
the case was one for a temporary injunction and arose from disputed ownership of an
easement between two lots. Both sides announced that they had witnesses to call. The court,
however, requested that the parties assemble their exhibits for a notebook and prepare briefs
on the applicable law. The court informed the parties that it would review the exhibits and
determine the ownership issue as if the parties were seeking a summary judgment. When the
Knutsons raised concerns about the need for testimony on some issues, the court explained
that the hearing presently before the court was for a temporary injunction and that testimony
would be reserved for the trial on the merits. The Knutsons then questioned whether the
parties would be allowed to urge objections to the exhibits at the trial on the merits, since the
exhibits were being offered for a temporary injunction hearing. The court replied that the
parties would have to reintroduce the exhibits at trial and "[t]his [hearing] is just [for a]
temporary injunction." The appellate record contains over fifty exhibits that were available
for the trial court's review.

 The Friesses filed their Memorandum of Law, arguing that the easement between the
properties was intended as a separate tract of land and was never a part of the Knutsons'
property. Further, the Friesses argued that they were entitled to ownership by adverse
possession because they had fenced the easement and possessed it openly and peacefully.

 The Knutsons filed their Memorandum of Law, arguing that the Friesses were not
entitled to claim the property by adverse possession because they had been granted
permission by the easement owner to construct a fence around the tract and because the tract
had been held by the Friesses less than ten years. Further, the Knutsons argued that any right
the Friesses may have had to maintain the fence was extinguished when the easement owners
executed a "Release of Easement."

 The Knutsons also argued that the amount of acreage shown in the final plat's
parenthetical notation for their lot-5.74 acres-is evidence that the easement is their property. 
The Knutsons contended that the easement must be part of their lot because, without the
easement, their lot does not contain the full 5.74 acres indicated on the plat notation. The
Friesses, however, presented an expert report concluding that the access easement was a
separate tract from Lots Three and Four.

 On March 26, 2008, the trial court rendered judgment. In its entirety, the judgment
stated: "After reading both plaintiff's and defendant's/counter plaintiff's memoranda of law,
The Court finds for the Plaintiff in the suit at bar and DENIES defendant's counterclaim." (1) 
 On March 27, 2008, the Knutsons requested findings of fact and conclusions of law
but did not ask for specific findings. On April 20, 2008, the Knutsons filed a notice of past-due findings. Then on April 21, 2008, the Friesses filed a proposed judgment, which
included relief on their claims for declaratory judgment and permanent injunction, remedies
they sought in their second amended petition. The proposed declaratory-judgment contained
eight findings for the trial court to decree.

 On April 22, 2008, the trial court rendered another judgment, its final judgment, which
is the subject of this appeal. The judgment contains seven findings, including one that
divided the easement between the Knutsons and the Friesses. (2) The judgment states as
follows:

 It is DECLARED, ADJUDGED, AND DECREED:

 1. The [C]ourt finds that title vests in both Plaintiff and Defendant to a
certain 60 foot wide easement of a tract or parcel containing .7367
acres of land [.] 

 

 2. The [C]ourt finds that the 60 foot easement should be split between the
parties, each retaining 30 feet up to the center line of said easement.

 3. The Court finds insufficient evidence to support Defendant's
contentions that the 60 foot wide easement was intended to be solely
part of Lot 3 of the Ridgewood Subdivision.

 4. The Court finds that the deeds of both Lots 3 and 4 of the Ridgewood
Subdivision do not state whether the lots retain a reservation in said
easement.

 5. The Court finds that the deed to said easement to Houston Lighting &
Power was intended to be a separate fee tract with no express
reservation therein.

 6. Upon examination of the deed conveyances to Lots 3 and 4, the Court
finds no acreage denoted in the legal description nor metes and bounds
describing the easement tract in the deed instrument. The Court finds
that extrinsic evidence such as a plat map may not be used to supply the
essential elements of the legal description.

 7. The Court finds the Strip and Gore Doctrine to be analogous in this
situation which denotes the original grantor had no intention of
reserving fee in a narrow strip of land, and as such, upon termination
of the Easement prescription, the Easement tract would fall to the
adjoining properties to the center line (i.e. Lots 3 and 4 get [an] equal
30 feet of Said Easement to the center line of Said Easement)[.]

 

 Any relief not expressly granted herein is DENIED.

Issues


 Among their complaints on appeal, the Knutsons and the Friesses contend that the trial
court erred in considering their claims under summary judgment procedures and erred by
depriving them of proper notice and an opportunity to be heard. We agree.

 As the trial court explained before taking the matter under advisement, the issue
before the trial court was whether to grant temporary injunctive relief to either the Friesses
or the Knutsons. The purpose of a temporary injunction is to preserve the status quo until
a final hearing on the merits. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002);
see Tex. R. Civ. P. 683 ("Every order granting a temporary injunction shall include an order
setting the cause for trial on the merits with respect to the ultimate relief sought."). A party
seeking a temporary injunction must plead and prove: (1) a cause of action against the
defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and
irreparable injury in the interim. Butnaru, 84 S.W.3d at 204. A temporary injunction
applicant is not required to establish that he will prevail on final trial on the merits of his
cause of action; he need only show a probable right on final trial to the relief he seeks. Id.
at 204, 211.

 The Friesses and the Knutsons presented the trial court with numerous exhibits,
including deeds, plats, easements, and expert reports. These documents could assist a court
in deciding whether either of the parties met the criteria for injunctive relief. In particular,
the documents should have aided in determining "probable right to relief," and probable
ownership is directly relevant to that issue. The court's final judgment, however, did not
grant a temporary injunction to either the Friesses or the Knutsons. Rather, the court omitted
this step and determined actual ownership, the merits of the case, without a trial. 

 Rule 166a(c) requires that a party moving for summary judgment must state specific
grounds for the relief in its motion. Tex. R. Civ. P. 166a(c). None of these parties filed a
motion for summary judgment. The trial court errs by granting a sua sponte summary
judgment when no party has moved for summary judgment because there is no claim
contained in a motion for summary judgment as required by the procedural rules. Bank of
America, N.A. v. Amarillo Nat'l Bank, 156 S.W.3d 108, 112 (Tex. App.-Amarillo 2004, no
pet.). While in this case, the trial court stated that it would use summary judgment
procedures, the rendered judgment does not recite that the court granted a summary
judgment. But to the extent the trial court reviewed this case as if it were a summary
judgment proceeding, the court was not authorized to do so by the Texas Rules of Civil
Procedure.

 To the extent that the trial court employed its own procedure to adjudicate the merits
of the parties' claims, the court was required to do so in a manner that protected the parties'
due process rights. Due process requires that a party receive "reasonable notice" of trial and
an opportunity to be heard. Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86, 108 S.Ct.
896, 899-900, 99 L.Ed.2d 75 (1988); LBL Oil Co. v. Int'l Power Servs., Inc., 777 S.W.2d 390,
390-91 (Tex. 1989). Rule 245 provides that "reasonable notice" is not less than forty-five
days for a first trial setting. Tex. R. Civ. P. 245.

 In this case, the parties had notice and an opportunity to be heard at the preliminary
hearing, the purpose of which was not to adjudicate the merits of the parties' claims but
instead to determine whether to grant temporary injunctive relief. The trial court gave the
parties no notice that it had decided to rule on the merits and, by failing to do so, gave them
no opportunity to be heard in that part of the proceeding. See generally, Boateng v.
TrailBlazer Health Enters., L.L.C., 171 S.W.3d 481, 492-95 (Tex. App.-Houston [14th Dist.]
2005, pet. denied) (finding trial court erred in ruling on the merits of bill-of-review petitions
without notice and opportunity to be heard) (collecting other cases in which trial court erred
by not giving notice). 

 Because we find the trial court erred by deciding the merits of the claims based on
motions that sought temporary injunctive relief, we sustain the parties's due process issues. (3) 
We reverse the trial court's judgment and remand this case for further proceedings consistent
with this opinion. 

 REVERSED AND REMANDED.

 


 _____________________________

 HOLLIS HORTON

 Justice


Submitted on April 3, 2009

Opinion Delivered May 14, 2009 

Before Gaultney, Kreger, and Horton, JJ.
1. The Knutsons' counterclaims were (1) trespass to try title, (2) declaratory judgment,
(3) fraud, (4) gross negligence, (5) slander of title, and (6) negligence.
2. While these findings concern the same matters as the findings proposed by the
Friesses, most of the court's findings are different from the Friesses' proposal.
3. The Knutsons ask that we reverse and render judgment for them, but such a
determination would be error when there has been no proper trial on the merits. See Tex. R.
App. P. 43.3(a). Because the other issues the parties raise would afford them no greater relief
than has been granted, we need not consider them. See Tex. R. App. P. 47.1.