NO. 07-08-0267-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 8, 2008

______________________________

JOSEPH AKA JOEY H. JEFFREY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-418170; HONORABLE WELDON KIRK, JUDGE

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION

Joseph Jeffrey, (aka Joey H. Jeffrey), seeks to appeal a judgment convicting him of intoxicated assault with a vehicle and imposing a life sentence.  A copy of the judgment included in the clerk’s record and appellant’s docketing statement indicate sentence was imposed May 20, 2008.  His notice of appeal was filed in the trial court on June 23, 2008.  Finding we have no jurisdiction to consider the appeal, we dismiss it.

By letter, this Court informed appellant that the notice of appeal did not appear timely and directed him 
to file any documents or matters considered necessary for the Court to determine its appellate jurisdiction
.  In response, his counsel has submitted an affidavit in which he describes the circumstances that caused him to file the notice of appeal on June 23.  Counsel’s affidavit concludes this Court is without jurisdiction to hear the appeal.  We agree.

Our appellate 
jurisdiction is triggered through a timely notice of appeal.  
Olivo v. State
, 918 S.W.2d 519, 522 (Tex.Crim.App.1996)
.  Rule of Appellate Procedure 26.2(a) requires a notice of appeal be filed within 30 days after the day sentence is imposed in open court, or within 90 days after imposition of the sentence if a timely motion for new trial is filed. No motion for new trial was filed in this case.  

The rules permit an appellate court to extend the time to file a notice of appeal, under a procedure outlined in Rule of Appellate Procedure 26.3.  Appellant did not initiate that procedure in this case.  Appellant’s notice of appeal, filed more than thirty days after imposition of sentence in open court, was untimely.

The appropriate vehicle for seeking an out-of-time appeal is by writ of habeas corpus from the Texas Court of Criminal Appeals pursuant to Code of Criminal Procedure article 11.07.  Tex. Code Crim. Proc. Ann art. 11.07 (Vernon Supp. 2004);  
Portley v. State
, 89 S.W.3d 188, 190 (Tex.App.–Texarkana 2002, no pet.).  Because appellant’s notice of appeal was untimely, this Court has no jurisdiction to take any action but to dismiss the appeal. 
Slaton v. State
, 981 S.W.2d 208, 210 (Tex.Crim.App. 1998); 
see Olivo
, 918 S.W.2d at 522. 

Consequently, we dismiss the appeal for want of jurisdiction.

James T. Campbell

           Justice

Do not publish.  

ENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 27, 2008

______________________________

MARSHALL CAPPS, IN HIS CAPACITY AS THE GUARDIAN

 OF THE ESTATE OF LAZARO SANTA CRUZ, APPELLANT

V.

STATE OF TEXAS, BY AND THROUGH TEXAS DEPARTMENT

 OF STATE HEALTH SERVICES, APPELLEE

_________________________________

FROM THE COUNTY COURT OF WILBARGER COUNTY;

NO. 116; HONORABLE DON R. WINDLE,  JUDGE
(footnote: 1)

_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

MEMORANDUM OPINION

Appellant, Marshall Capps, in his capacity as the Guardian of the Estate of Lazaro Santa Cruz, appeals the trial court’s denial of his motion for summary judgment and the rendition of summary judgment in favor of Appellee, the State of Texas, by and through the Department of State Health Services, in Capps’s petition for bill of review which sought to set aside an agreed judgment previously rendered in favor of Appellee, and his petition seeking recovery of damages.  By one issue, Capps asserts the trial court erred in granting the State’s motion for summary judgment because (1) Santa Cruz had a meritorious defense, (2) that he was prevented from asserting because of the State’s extrinsic fraud and wrongful acts, and (3) the failure to raise his meritorious defense was not due to his own fault or negligence.  We affirm.   

Background

In 1980, Santa Cruz was involuntarily committed to the care of the state hospital system pursuant to provisions of the Texas Code of Criminal Procedure.
(footnote: 2)  For fourteen years, he received Social Security benefits while the State acted as his representative payee.  During this period, the State used a portion of Santa Cruz’s Social Security  benefits as compensation for his support, maintenance, and treatment.  The remainder, $57.00 per month, was received by Santa Cruz for his personal use.  In addition, he earned $400 per week working as a janitor in two state hospitals as part of their client work program.  Santa Cruz saved portions of his monthly personal allowance and janitorial wages first in a client trust account through the State, and later through a private bank account at the Citizens 1
st
 Bank in Rusk, Texas. 

From July 1988 through January 1996, Vernon State Hospital (VSH) notified Santa Cruz of the amount of his monthly fee for support, maintenance, and treatment.  The charge was based, in part, on his monthly Social Security benefit and ran between $500 and $700 per month.  In January 1996, Santa Cruz received his last notification indicating his monthly fee was $704.  

In July 1996, the Social Security Administration terminated Santa Cruz’s benefits.  In January 1997, the State filed an application for the appointment of a guardian for Santa Cruz’s estate.  Six months later, Capps, an attorney licensed to practice law in Texas, was appointed guardian.  In December 1997, Capps filed an inventory indicating Santa Cruz had accumulated $58,065.42 in his Citizens 1
st
 Bank account.      

In February 1998, VSH submitted a verified claim to Capps for $102,960 representing VSH’s costs for Santa Cruz’s support, maintenance, and treatment for the year ending December 31, 1997.  This claim was based on a monthly fee of $8,580.  Capps did not act on the State’s claim within the thirty day period prescribed by statute and the State filed a petition seeking payment.  Capps responded with a general denial.  Thereafter, the State filed requests for admission and later a motion for summary judgment seeking full reimbursement.  

In December 1998, four days prior to a hearing on the State’s motion for summary judgment, Capps filed an application for authority to employ an attorney to file a petition in bankruptcy on behalf of Santa Cruz’s estate.  The trial court issued an order appointing  Ronald Yandell and, three days later, Capps filed a petition in bankruptcy on behalf of Santa Cruz.

Two months later, in February 1999, Capps filed an application for authority to dismiss the bankruptcy action and settle the State’s $102,960 claim for $43,000.  The application indicated Yandell advised Capps that accepting the State’s proposal of $43,000 would leave more property remaining in Santa Cruz’s estate than would remain if the bankruptcy were pursued to conclusion.  Capps’s application concluded that, accepting the State’s offer, was in the estate’s “best interests,”  “necessary and advisable to protect” the estate and “provide the future care and support” for Santa Cruz.

In March 1999, the trial court entered an agreed judgment approved and signed by the State, Capps, and Yandell.  The agreed judgment stated, in pertinent part, as follows:

At the hearing on this cause, the attorney of record for Plaintiff and the attorney of record for Defendant announced to the Court that Plaintiff and Defendant have agreed that judgment should be rendered for Plaintiff as agreed, and 
in full settlement of claims made by the Plaintiff in its Original Petition filed in this cause. 
 Having considered the pleadings and official records on file in this cause and the evidence, the Court is of the opinion, and so finds, that it has jurisdiction of the parties and the subject matter herein, 
and that Plaintiff has sustained the burden of proof thereon and judgment should therefore be rendered for Plaintiff as agreed. 
 PLAINTIFF AGREES to compromise and settle its claim in the amount of $102,960.00 for the sum of $43,000, to be paid in full by the Defendant within thirty days (30) after entry of judgment herein.  IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the State of Texas . . . recover from the Estate of LAZARO SANTACRUZ, and MARSHALL CAPPS, Defendant, in his capacity as guardian . . . the sum of $43,000 . . . .  
All relief not expressly granted herein is denied.

(Emphasis added).

In November 2000, Capps filed an application to employ an attorney to file the bill of review which is the subject of this appeal.  The trial court entered an order approving the application and, a month later, Capps filed a petition to set aside the agreed judgment between Capps and the State.  In substance, the bill of review alleged that the State had failed to advise Capps of the availability of a trust fund exemption
(footnote: 3) and other safekeeping procedures that may have sheltered a substantial portion of Santa Cruz’s estate from the State’s claim for support, maintenance, and treatment. 

The parties filed cross-motions for summary judgment and the trial court, the Honorable Gary B. Streit presiding, denied Capps’s motion for summary judgment on his second amended petition for bill of review and second amended petition.  Capps then moved for assignment of the action to a probate judge and the Honorable 
Don R. Windle of the Denton County Probate Court, was assigned to hear the case.  By agreement of the parties, all claims being asserted by Capps were to be resolved by the resubmission of 
Plaintiff’s Motion for Summary Judgment and Brief on Plaintiff’s Second Amended Petition for Bill of Review and Plaintiff’s Second Amended Petition 
and by the consideration of 
Defendant’s Motion for Summary Judgment
 and 
Defendant’s Response in Opposition to Plaintiff’s Motion for Summary Judgment on Plaintiff’s Second Amended Petition
, as a cross-motion for summary judgment.
  In the 
Final Summary Judgment
, Judge Windle granted the State’s motion for summary judgment and denied Capps’s motion for summary judgment without specifying the grounds upon which the judgment was based.  

Discussion

Capps contends the trial court abused its discretion when it rendered summary judgment in favor of the State.   We disagree. 

 
I. Standard of Review

In reviewing a summary judgment, this Court must apply well-established standards which are: (1) the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law
; (2)  in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true
; and (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.
  
Am. Tobacco Co. v. Grinnell, 
951 S.W.2d 420, 425 (Tex. 1997) (citing
 Nixon v. Mr. Prop. Mgmt. 
Co.,  690 S.W.2d 546, 548-49 (Tex. 1985)
).
  We review the trial court’s summary judgment 
de novo.  Valence Operating Co. v. Dorsett, 
164 S.W.3d 656, 661 (Tex. 2005). 

Furthermore, w
hen the motion for summary judgment is based on several different grounds and the order granting summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any of the grounds presented in the motion are meritorious.  
Western Investments, Inc. v. Urena, 
162 S.W.3d 547, 550 (Tex. 2005); 
Carr v. Brasher
, 776 S.W.2d 567, 569 (Tex. 1989).

For a party to prevail on a motion for summary judgment, that party must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c);  
Browning v. Prostok, 
165 S.W.3d 336, 344 (Tex. 2005).  To establish entitlement to judgment as a matter of law, a movant must either prove all essential elements of his claim or defense,
 MMP, Ltd. v. Jones
, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action.  
Shaw v. Moss
, 67 S.W.3d 836, 842 (Tex. 2001); 
 Randall's Food Mkts, Inc. v. Johnson
, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment.  
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d  671, 678 (Tex. 1979);  
Barbouti v. Hearst Corp.
, 927 S.W.2d 37, 64 (Tex.App.–Houston [1st Dist.] 1996, writ denied).  

II. Bill of Review

Because they involve the same claim or cause of action, we analyze Santa Cruz’s original petition and petition for bill of review together.  A bill of review is an equitable proceeding to set aside a judgment that is not void on its face but can no longer be challenged by motion for new trial or appeal.  
Caldwell v. Barnes, 
154 S.W.3d 93, 96 (Tex. 2004); 
King Ranch Inc. v. Chapman, 
118 S.W.3d 742, 751 (Tex. 2003), 
cert. denied
, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).  
The fact that an injustice has occurred is not sufficient to justify bill of review relief.  
Wembley Inv. Co. v. Herrera
, 11 S.W.3d 924, 927 (Tex. 1999).  A bill of review is designed to prevent manifest injustice.  
Alexander v. Hagedorn, 
148 Tex. 565, 226 S.W.2d 996, 998 (1950)
.

To prevail on his bill of review, Santa Cruz was required to plead and prove (1) a meritorious claim or defense to the underlying cause of action, (2) that he was prevented from making due to the fraud, accident or wrongful act of his opponent, and (3) that he was not at fault or negligent.
(footnote: 4)  
Caldwell, 
154 S.W.3d at 96;  
Hagedorn, 
226 S.W.2d at 998.
  This preliminary showing of entitlement is essential in order to assure that valuable judicial resources will not be wasted by conducting a spurious “full-blown” examination on the merits.  
Baker v. Goldsmith, 
582 S.W.2d 404, 408 (Tex. 1979).  

In the context of a bill of review, a defendant is entitled to a summary judgment against the proponent of the bill of review
 if he can establish, as a matter of law, the absence of any of these three elements.  
Hartsfield v. Wisdom, 
843 S.W.2d 221, 223 (Tex.App.–Amarillo 1992, pet. denied) (citing 
Montgomery v. Kennedy, 
669 S.W.2d 309, 311-12 (Tex. 1984)).  Appellee contends the trial court did not err in granting its’ motion for summary judgment, or in denying Santa Cruz’s motion for summary judgment, because Santa Cruz cannot establish, as a matter of law, at least one essential element of his cause of action.  
See Shaw v. Moss
, 67 S.W.3d at 842.

A. Meritorious Claim of Defense

For purposes of our analysis we will assume, without finding, that Capps has plead a meritorious defense to the underlying cause of action and has raised, by competent summary judgment evidence, more than a scintilla of evidence to prove those allegations.

B. Fraud, Accident or Wrongful Act

In addition to a meritorious defense, Santa Cruz must also establish that he was prevented from making that defense by the fraud, accident or wrongful act of the Appellee.  Furthermore, that fraud must be 
extrinsic fraud, as opposed to intrinsic fraud, in order to prevail on his petition for bill of review.  
King Ranch, 
118 S.W.3d at 752; 
Tice v. City of Pasadena
, 767 S.W.2d 700, 702 (Tex. 1989).  Extrinsic fraud “is fraud that denie[s] a party the opportunity to fully litigate at trial all the rights and defenses that could have been asserted,”  
King Ranch, 
118 S.W.3d at 752, and includes “wrongful conduct practiced outside the adversary trial–such as keeping a party away from court, making false promises of compromise, denying a party knowledge of the suit–that affects the manner in which the judgment is procured.“  
Ince v. Ince, 
58 S.W.3d 187, 190 (Tex.App.–Waco 2001, no pet.) (citing 
Hagedorn, 
226 S.W.2d at 1002).  Extrinsic fraud is “collateral” fraud in the sense that it must be “collateral” to the matter actually tried and not something which was actually or potentially in issue in the trial.  
Montgomery, 
669 S.W.2d at 312.  

In contrast, intrinsic fraud “relates to the merits of the issues which were presented and presumably were or should have been settled in the former action.”  
Tice, 
767 S.W.2d at 702.  Intrinsic fraud “is inherent in the matter considered and determined in the trial where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated there.”  
Montgomery
, 669 S.W.2d at 313.  

Here, Capps seeks to set aside an agreed judgment on the State’s claim for costs related to Santa Cruz’s support, maintenance, and treatment incurred in 1997.  As such, the agreed judgment represents a judgment on the merits of the State’s claim and is “conclusive, not only on matters actually litigated, but it is also conclusive on every other matter that could have been litigated and decided as an incident to or essentially connected with the subject matter of the prior litigation.”  
Freeman v. Cherokee Water Co., 
11 S.W.3d 480, 483 (Tex.App.–Texarkana 2000, no pet.).  Further, agreed judgments are contracts that end all controversy between the parties.  
Pate v. Pate
, 874 S.W.2d 186, 188 (Tex.App.–Houston [14
th
 Dist.] 1994, writ denied).  Thus, intrinsic fraud, here, would encompass any legal claim or defense available to Capps including any alleged fraud by the State that pertained to any issue related to the State’s claim for reimbursement that 
was, or could have been litigated
, in the State’s claim proceeding.  

Before and after the State initiated its claim, Capps contends the State misled and/or failed to advise 
either Santa Cruz or himself of the availability of trust fund accounts and/or other safekeeping procedures which, if implemented, might have sheltered a substantial portion of Santa Cruz’s estate from the State’s claim.  Specifically, Capps asserts that the State miscalculated Santa Cruz’s monthly fee for 1997, failed to give Santa Cruz notice of the 1997 fee increase, and failed to advise Capps that $50,000 of Santa Cruz’s estate could have been exempt from claims for reimbursement under section 552.018 of the Texas Health & Safety Code if the funds had been placed in a trust.  
Whether the State’s claim was subject to reduction or elimination due to a miscalculation, failure to give notice of a fee change, or failure to inform Capps of a statutory trust exemption goes to the very essence of the validity and/or amount of the State’s claim.  These issues could have been litigated in the State’s original claim proceeding.  As such, Capps alleges intrinsic fraud as opposed to extrinsic fraud.  
See, e.g., In re the Office of the Attorney General, 
193 S.W.3d 690, 693 (Tex.App.–Beaumont 2006, no pet.); 
McIntyre v. Wilson, 
50 S.W.3d 674, 680 (Tex.App.–Dallas 2001, pet. denied). 

Capps also claims the State owed Santa Cruz and/or Capps a fiduciary duty as Santa Cruz’s caretaker and breached that duty by failing to advise Capps of a change in Santa Cruz’s monthly fee or his legal rights regarding a possible trust exemption.  In Texas, the law recognizes that there is no duty to inform others of the requirements of the law because all persons are presumed to know the law.  
E. H. Stafford Mfg. Co. v. Wichita School Supply, Co., 
112 Tex. 650, 23 S.W.2d 695, 697 (1930).  Nevertheless, if the State had any duty to advise Santa Cruz or Capps pursuant to an existing fiduciary relationship and failed in that duty, the breach of such a duty could have been alleged and litigated in the State’s claim proceeding.  Thus, these claims are also intrinsic fraud allegations.  Because Capps could have litigated these claims in the original action, the agreed judgment is 
res judicata 
as to all these claims.  
See Igal v. Brightstar Information Technology Group, Inc., 
250 S.W.3d 78, 86 (Tex. 2008);  
Barr v. Resolution Trust Corp., 
837 S.W.2d 627, 628 (Tex. 1992).   

After Capps was appointed guardian and the State filed its certified claim, Capps asserts State representatives informed him on several occasions that he could do nothing to prevent VSH from seeking reimbursement from Santa Cruz’s earnings and they were unaware of any defenses to the State’s claim.  After Capps’s appointment and the State initiated an adversarial proceeding against Santa Cruz’s estate, no fiduciary relationship existed between the State and Capps that required the State to give Capps legal advice on how to defend against the State’s claim and/or shelter Santa Cruz’s assets.  
See Taub v. Houston Pipeline Co., 
75 S.W.3d 606, 622 (Tex.App.–Texarkana 2002, pet. denied).  Moreover, the State representatives’ statements to Capps to the effect that he could do nothing to prevent VSH from seeking reimbursement from Santa Cruz’s earnings or that they were unaware of any defenses to the State’s claim were, at most, legal opinions–not fraudulent misrepresentations.  
See Taub, 
75 S.W.3d at 621-22.  As such, the statements are not actionable.  
Id. 

Capps does not assert, and the record does not support, any allegation that he was denied an opportunity to investigate any facts related to the amount or validity of the State’s claim.  Rather, Capps contends simply that the State failed to give him certain legal advice.  As guardian and attorney for the estate,
(footnote: 5) 
see Insurance Company of North America v. Westergren, 
794 S.W.2d 812, 814-15 (Tex.App.–Corpus Christi 1990, orig. proceeding [leave denied]), Capps was equally or, in most cases, better versed in the law than the State representatives with whom he spoke and certainly more qualified and motivated to undertake legal research to determine the defenses available to his ward and client.  

Santa Cruz’s reliance on 
Jones v. Texas Department of Protective and Regulatory Services, 
85 S.W.3d 483 (Tex.App.–Austin 2002, pet. denied) is inapposite.  In 
Jones, 
petitioner sought a bill of review and alleged she involuntarily signed an affidavit relinquishing her parental rights because of representations by state representatives that, if she did sign, her daughter would be placed with her cousin.  
Id. 
at  492-93.  Her attorney was not present when she signed the affidavit.  
Id
.  Subsequently, her daughter was not placed with her cousin but in foster care.  85 S.W.3d at 486.  Here, the State made no misrepresentations of fact to either Santa Cruz or Capps and Santa Cruz’s interests were represented by his guardian and attorney, Capps, and a second attorney, Yandell, at the signing of the agreed judgment.      

 
 Intrinsic issues underlying a judgment attacked by a bill of review have no probative value on the type of fraud necessary to support a bill of review, 
King Ranch, 
118 S.W.3d at 752, because each party must guard against adverse findings on issues directly presented for decision.  
See Boaz v. Boaz, 
221 S.W.3d 126, 131 (Tex.App.–Houston [1
st
 Dist.] 2006, no pet.).  At most, Capps’s allegations assert intrinsic fraud.  As such, Capps should have “litigated the question[s] at the time rather than join in having judgment entered against him and [permitting it] to become final before deciding to litigate it by bill of review.”  
McIntyre
, 50 S.W.3d at 694 (quoting 
Pollard v. Steffens, 
161 Tex. 594, 343 S.W.2d 234, 240 (1961)).  Accordingly, because Capps does not allege extrinsic fraud but rather only argues intrinsic fraud, as a matter of law, he cannot successfully maintain a bill of review on these grounds.  

C. Negligence

Having concluded that Santa Cruz was not prevented from asserting a defense by extrinsic fraud, we need not decide whether his petition seeking to set aside the agreed judgment also fails to demonstrate that he is without fault or neglect. 

Conclusion

Capps had the burden of proof on the issue of extrinsic fraud and his failure to make a 
prima facie 
case defeats his action for a bill of review.  Capps’s issues are overruled and 
the trial court’s judgment is affirmed.

Patrick A. Pirtle

      Justice
       

       

FOOTNOTES
1:
2:
3:
4:
5: